125 T.C. No. 15

UNITED STATES TAX COURT

EDWARD F. MURPHY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10239-03L.                    Filed December 29, 2005.

P asks us to review a determination by R's settlement officer (SO) that R may proceed with collection by levy of P's unpaid tax liability for 1999. P claims that the SO abused her discretion by (1) rejecting P's offer in compromise, based alternatively on doubt as to collectibility and the promotion of effective tax administration, and (2) improperly and prematurely concluding P's hearing. R objects to P's testimony as to reasons he did not pay his 1992-2001 tax liabilities as they came due and the SO's testimony as to entries in her case activity notes and certain aspects of her handling of the case.

1. <u>Held</u>: P's testimony is excluded.

2. <u>Held</u>, <u>further</u>, SO's testimony is admitted as to meaning of notations and abbreviations in her case activity report; the remainder of her testimony is excluded.

3. Held, further, SO did not err in rejecting offer in compromise based, alternatively, on doubt as to collectibility and effective tax administration.

4. Held, further, SO did not err in concluding hearing following P's failures to meet various due dates, including due date for revised offer in compromise.

5. Held, further, there were no improprieties in SO's actions or hearing procedures.

6. Held, further, SO did not abuse her discretion in determining that R may proceed by levy to collect P's unpaid tax liability for 1999.

Timothy J. Burke, for petitioner.

Nina P. Ching and Maureen T. O'Brien, for respondent.

HALPERN, Judge: This case is before the Court to review a determination made by one of respondent's Appeals officers that respondent may proceed to collect by levy unpaid taxes with respect to petitioner's 1999 tax year. We review the determination pursuant to section 6330(d)(1).

Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure. Dollar amounts have been rounded to the nearest dollar.

FINDINGS OF FACT

Some facts have been stipulated and are so found. The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference.

Petitioner resided in Quincy, Massachusetts, at the time the petition was filed.

On April 15, 2002, respondent issued to petitioner a Final Notice - Notice of Intent to Levy and Notice of Your Right to a Hearing. The notice pertains to petitioner's unpaid Federal income tax for 1999, in the amount of $16,560 (the unpaid tax).

By letter dated April 23, 2002, petitioner's representative, Timothy J. Burke, Esq., submitted an Internal Revenue Service (IRS) Form 12153, Request for a Collection Due Process Hearing, to the IRS on petitioner's behalf. On an attachment to the Form 12153, petitioner asserts: "It is in the best interest of the government and the taxpayer that an Offer in Compromise be entered into." Petitioner raised no other issue on the Form 12153 or during the subsequent hearing accorded him (the section 6330 hearing or, sometimes, the hearing).

On or about September 13, 2002, an Appeals official, Settlement Officer Lisa Boudreau, was assigned to petitioner's case. On September 16, 2002, Ms. Boudreau sent Mr. Burke a letter scheduling a meeting for September 20, 2002. At Mr. Burke's request, that meeting was rescheduled for October 3, 2002 (the October 3 meeting). Ms. Boudreau and Mr. Burke, but not petitioner, attended the October 3 meeting. At the meeting, Mr. Burke submitted to Ms. Boudreau certain collection information statements that had been requested by her and an IRS Form 656,

Offer in Compromise. By the Form 656, petitioner proposed to compromise his unpaid income tax liabilities from 1990 through 2001 (later limited to 1992 through 2001 since the period of limitations on collection for 1990 and 1991 had run). Petitioner's unpaid income tax liabilities for 1992 through 2001 (the 1992-2001 liability) total $275,777. Petitioner offered to pay $10,000 in compromise of the 1992-2001 liability (sometimes, the offer or the offer in compromise), such amount to be paid within 24 months of acceptance of the offer. Petitioner checked boxes on the Form 656 justifying the offer by reason of both "Doubt as to Collectibility" (i.e., he had insufficient assets and income to pay the full liability) and "Effective Tax Administration" (i.e., he had sufficient assets to pay the full liability but, due to his exceptional circumstances, requiring full payment would cause an economic hardship or would be unfair and inequitable). In the portion of the form requesting an explanation of circumstances affecting the taxpayer's ability to fully pay the amount due, petitioner stated: "Please see attached." No attachment accompanies the copy of the form stipulated by the parties.

During the October 3 meeting, Ms. Boudreau asked Mr. Burke about the exceptional circumstances claimed by petitioner. Mr. Burke responded that petitioner was ill, but he would not disclose the nature of the illness, citing petitioner's wish on

that point. Ms. Boudreau advised Mr. Burke that, unless petitioner disclosed the circumstances of his illness, she would be unable to consider the illness. Mr. Burke said that he understood and had told his client that already. Among other things, Mr. Burke did tell Ms. Boudreau that petitioner was an insurance salesman, owed money on credit cards, owed about $90,000 to the Commonwealth of Massachusetts, and was divorced, with his ex-wife receiving residual payments from insurance contracts that petitioner had sold.

Ms. Boudreau concluded the October 3 meeting by requesting that petitioner submit by October 31, 2002, additional information and documents necessary for her to review the offer in compromise. Petitioner missed that due date. Indeed, following the October 3 meeting, and through February 10, 2003, petitioner repeatedly missed due dates that either Ms. Boudreau or Mr. Burke himself had set for submitting information necessary for Ms. Boudreau to review the offer in compromise. On one occasion during that period, due to petitioner's failure to meet submission due dates, Ms. Boudreau closed petitioner's case and concluded that she should sustain the proposed levy action. She decided to reopen the case only after petitioner belatedly complied with a request for certain information.

By letter dated February 10, 2003, petitioner provided to Ms. Boudreau the last of the information necessary for her to review the offer in compromise.

By March 19, 2003, Ms. Boudreau had reviewed the offer in compromise and supporting information submitted by petitioner and had concluded that the offer was too low. By letter dated March 19, 2003 (the March 19 letter), Ms. Boudreau informed Mr. Burke that an acceptable offer in compromise would have to be of at least $97,884. She enclosed copies of the income/expense and asset/equity tables that she used to compute that amount. Based principally on information provided by petitioner, Ms. Boudreau calculated petitioner's total monthly income to be $4,235 ($2,618 of net business income and $1,617 of pension income) and his necessary monthly living expenses to be $3,107, with a difference of $1,128. Ms. Boudreau multiplied the difference times 60 to determine the amount petitioner could pay over 60 months; viz, $67,680. Also based principally on information provided by petitioner, Ms. Boudreau calculated petitioner's net realizable equity to be $30,204. The sum that petitioner could pay over 60 months, $67,680, and his net realizable equity, $30,204, is $97,884 (the amount Ms. Boudreau had identified as an acceptable offer in compromise). Ms. Boudreau invited petitioner to submit an amended offer in compromise in the amount of $97,884 by April 9, 2003.

In response to the March 19 letter, Mr. Burke telephoned Ms. Boudreau on April 1, 2003, and agreed to amend the offer in compromise by April 18, 2003.  No amended offer was received by that date.  On April 25, 2003, Mr. Burke telephoned Ms. Boudreau and reported that petitioner was in the hospital.  He also told Ms. Boudreau that, no later than April 29, 2003, he would submit a copy of petitioner's 2002 Federal income tax return (the 2002 return), which had become due and was necessary to process any offer in compromise.

April 29, 2003, passed without Ms. Boudreau's receiving either the 2002 return or an amended offer in compromise.  On Thursday, May 1, 2003, she called Mr. Burke and left a voice message directing him to return her call on Monday, May 5, 2003.  Mr. Burke called as requested.  He reported that petitioner was out of the hospital, although he remained ill and continued to prohibit Mr. Burke from disclosing the nature of his illness.  Mr. Burke also reported that he would meet with petitioner later that week and contact Ms. Boudreau by May 9, 2003.

Neither Mr. Burke nor petitioner contacted Ms. Boudreau by May 9, 2003.

On May 12, 2003, Ms. Boudreau noted in her case activity record that the deadline set for May 9, 2003, as well as previous deadlines, had been missed.  She also noted that no viable

collection alternative had been proposed and she had decided that respondent's proposed collection action should stand.

On May 14, 2003, Ms. Boudreau submitted an IRS Form 5402-c, Appeals Transmittal and Case Memo, to her supervisor recommending that the proposed collection action stand. In an attachment to the Form 5402-c (the attachment), Ms. Boudreau states that she has verified that all legal and administrative requirements that needed to be satisfied with respect to collection by levy had been satisfied. She describes petitioner's offer to compromise the 1992-2001 liability ("approximately $260,000") for $10,000. She states that the offer was submitted on the alternative grounds of effective tax administration and doubt as to collectibility. She concludes that, because she is prohibited from accepting an offer in compromise based on effective tax administration unless the Commissioner could collect the outstanding liability in full, and petitioner has insufficient resources from which the Commissioner could collect the 1992-2001 liability in full, effective tax administration is unavailable as a ground for an offer in compromise. She concludes that, although petitioner cannot pay the entire 1992-2001 liability and may qualify for an offer in compromise based on doubt as to collectibility: "[H]e can pay considerably more than the $10,000 being offered."

On the attachment, she calculates the amount she believes that petitioner can pay in much the same way that, in the March 19 letter, she calculated what she described as an acceptable offer in compromise (at least $97,884). The only apparent difference is that she reduced her estimate of petitioner's monthly net business income from $2,618 to $2,356. She concludes: "The reasonable collection potential based on the income and expense figures provided by Mr. Murphy and calculated utilizing allowable expenses and accepted practices is $82,164.00." She recommends that petitioner's offer in compromise be rejected.

With respect to balancing the need for the efficient collection of the taxes due with the concern that the collection action be no more intrusive than necessary, she concludes: "This analysis indicates that this action is now necessary to provide for the efficient collection of the taxes despite the potential intrusiveness of enforced collection."

Ms. Boudreau's proposed disposition of petitioner's case was approved by her supervisor on May 19, 2003.

On May 23, 2003, Ms. Boudreau returned a telephone call from Mr. Burke. She informed him that she had rejected the offer in compromise because it was too low and had closed the case because of missed deadlines. Mr. Burke said petitioner was ill and had finally permitted him to disclose the nature of his illness

(which Mr. Burke disclosed to Ms. Boudreau). After the phone conversation, Mr. Burke faxed a letter to Ms. Boudreau asking that she reconsider her decision to close petitioner's case. The letter contains no new financial information and makes no new offer. Ms. Boudreau reviewed the letter and the case file and concluded that her decision to reject the offer should stand.

By Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330, dated May 29, 2003 (the notice of determination), Ms. Boudreau's supervisor notified petitioner that Appeals had sustained respondent's decision to proceed with collection of the unpaid tax by levy. An attachment to the notice of determination explains in some detail the matters considered at the hearing and the conclusions reached. It contains, among other things, statements that a review of petitioner's administrative file indicated that the statutory and administrative requirements that needed to be met with respect to the proposed levy had been satisfied, the offer in compromise was not a viable collection alternative, and collection by levy was necessary to provide for the efficient collection of the taxes despite the potential intrusiveness of enforced collection.

Petitioner timely petitioned this Court for review of the notice of determination.

OPINION

## I. Introduction

Petitioner has assigned error to Appeals' (Ms. Boudreau's) determination that respondent may proceed to collect the unpaid tax by levy (the determination). Before addressing the assignment, we provide a general overview of the authority of the Secretary of the Treasury (Secretary) to collect unpaid taxes by levy, the procedures he must follow to do so, and our authority to review the determination. We also describe the Secretary's authority to compromise a tax case. We then state the parties' arguments and dispose of respondent's objections to certain testimony of petitioner's and Ms. Boudreau's. Finally, we decide whether Ms. Boudreau erred in making the determination. We decide that she did not.

## II. Sections 6330 and 6331

Section 6331(a) authorizes the Secretary to levy against property and property rights where a taxpayer liable for taxes fails to pay those taxes within 10 days after notice and demand for payment is made. Section 6331(d) requires the Secretary to send the taxpayer written notice of the Secretary's intent to levy, and section 6330(a) requires the Secretary to send the

taxpayer written notice of his right to a section 6330 hearing at least 30 days before any levy is begun.[1]

If a section 6330 hearing is requested, the hearing is to be conducted by respondent's Appeals Office (Appeals), and, at the hearing, the Appeals officer or employee (without distinction, Appeals officer) conducting it must verify that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(b)(1), (c)(1). The taxpayer may raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy. Sec. 6330(c)(2)(A). The taxpayer is entitled to propose an offer in compromise or other alternative to immediate collection. See sec. 6330(c)(2)(A)(iii). The taxpayer may contest the existence or amount of the underlying tax liability

---

[1] A taxpayer receiving a notice of Federal tax lien has hearing rights similar to the hearing rights accorded a taxpayer receiving a notice of intent to levy. See sec. 6320(c). Indeed, the record in this case contains a Notice of Federal Tax Lien Filing and Your Right to a Hearing under Section 6320, dated May 3, 2002, addressed to petitioner, and concerning his unpaid Federal income tax for 1999 (the notice of Federal tax lien). Respondent has proposed that we find that (1) the Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330, dated May 29, 2003 (notice of determination), which we described supra in our Findings of Fact, relates only to the Final Notice - Notice of Intent to Levy and Notice of Your Right to a Hearing, issued Apr. 15, 2002, which we also described supra in our Findings of Fact, and (2) the notice of determination was issued under sec. 6330 only. Petitioner states that he does not dispute those proposed findings of fact, and we find accordingly. Therefore, we do not in this case concern ourselves with the notice of Federal tax lien or any determination under secs. 6320 and 6330 in connection therewith.

at the hearing if the taxpayer did not receive a statutory notice of deficiency with respect to the underlying tax liability or did not otherwise have an opportunity to dispute that liability. Sec. 6330(c)(2)(B).

At the conclusion of the hearing, the Appeals officer must determine whether and how to proceed with collection, taking into account, among other things, collection alternatives (e.g., an offer in compromise) proposed by the taxpayer and whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that the collection action be no more intrusive than necessary. See sec. 6330(c)(3).

We have jurisdiction to review the Appeals officer's determination where we have jurisdiction over the type of tax involved in the case. Sec. 6330(d)(1)(A); see Iannone v. Commissioner, 122 T.C. 287, 290 (2004). Where the underlying tax liability is properly at issue, we review the determination de novo. E.g., Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Where the underlying tax liability is not at issue, we review the determination for abuse of discretion. Id. at 182. In reviewing for an abuse of discretion under section 6330(d)(1), generally we consider only arguments, issues, and other matters that were raised at the section 6330 hearing or otherwise brought to the attention of Appeals. Magana v. Commissioner, 118 T.C. 488, 493

(2002); see also sec. 301.6330-1(f)(2), Q&A-F5, Proced. & Admin. Regs.  Whether an abuse of discretion has occurred depends upon whether the exercise of discretion is without sound basis in fact or law.  Freije v. Commissioner, 125 T.C. 14, 23 (2005).

III.  Offers in Compromise

Section 7122(a) authorizes the Secretary to compromise any civil or criminal case arising under the internal revenue laws. Section 7122(c) authorizes the Secretary to prescribe guidelines for the officers and employees of the IRS to determine whether an offer in compromise is adequate.  Regulations implementing section 7122 set forth three grounds for the compromise of a liability:  (1) Doubt as to liability, (2) doubt as to collectibility, and (3) to promote effective tax administration (effective tax administration).  Sec. 301.7122-1(b), Proced. & Admin. Regs.  Doubt as to liability is not at issue in this case.

Doubt as to collectibility exists in any case where the taxpayer's assets and income are less than the full amount of the liability.  Sec. 301.7122-1(b)(2), Proced. & Admin. Regs. Generally, under respondent's administrative pronouncements, an offer to compromise based on doubt as to collectibility will be acceptable only if the offer reflects the reasonable collection potential of the case (i.e., that amount, less than the full liability, that the IRS could collect through means such as administrative and judicial collection remedies).  Rev. Proc.

2003-71, sec. 4.02(2), 2003-2 C.B. 517. The offer must include all unpaid tax liabilities and periods for which the taxpayer is liable. Internal Revenue Manual (IRM) pt. 5.8.1.7 (Sept. 1, 2005) (Liabilities to be Compromised).[2] In some cases, the Secretary will accept an offer of less than the reasonable collection potential of the case if there are special circumstances. Rev. Proc. 2003-71, supra. Special circumstances are (1) circumstances demonstrating that the taxpayer would suffer economic hardship if the IRS were to collect from him an amount equal to the reasonable collection potential of the case or (2) if no demonstration of such suffering can be made, circumstances justifying acceptance of an amount less than the reasonable collection potential of the case based on public policy or equity considerations. IRM pt. 5.8.4.3.4 (Sept. 1, 2005) (Effective Tax Administration and Doubt as to Collectibility with Special Circumstances). To demonstrate that compelling public policy or equity considerations justify a compromise, the taxpayer must be able to demonstrate that, due to exceptional circumstances, collection of the full liability would undermine public confidence that the tax laws are being

_____

[2] All citations to the Internal Revenue Manual are to the manual as found at http://www.irs.gov/irm/index.html (last visited Dec. 27, 2005).

administered in a fair and equitable manner.  Sec. 301.7122-1(b)(3)(ii), Proced. & Admin. Regs.

Where, because the reasonable collection potential of the case exceeds the taxpayer's liability, doubt as to collectibility is not a ground for compromise, the Secretary may enter into a compromise on the ground of effective tax administration.  Sec. 301.7122-1(b)(3), Proced. & Admin. Regs.  Before the Secretary will enter into a compromise on the ground of effective tax administration, the taxpayer must show, among other things, that collection in full would cause him economic hardship or, if he cannot, that compelling public policy or equity considerations justify such compromise.  Id.

IV.  The Parties' Arguments

In support of his assignment of error, petitioner avers that (1) acceptance of an offer in compromise was in the best interests of respondent and petitioner, and (2) Ms. Boudreau improperly and prematurely concluded the section 6330 hearing. With respect to the averments, petitioner asks us to consider not only the administrative record of the hearing, which consists of documents stipulated by the parties (the hearing record), but also petitioner's and Ms. Boudreau's trial testimony.

Respondent answers that Ms. Boudreau did not abuse her discretion in rejecting the offer in compromise and determining that respondent may proceed to collect the unpaid tax by levy,

nor did she prematurely and improperly conclude the hearing. Respondent objects to the admission of both petitioner's and Ms. Boudreau's trial testimony on the ground that the testimony is not relevant to our deciding whether Ms. Boudreau abused her discretion.

V. Admissibility of Trial Testimony

A. Trial Testimony

At the trial of this case, over the objection of respondent, petitioner testified as to his marriage and divorce, his military service, his health, and his credit card debt, all as it affected his ability to pay his tax liabilities as they came due. Also over the objection of respondent, petitioner testified as to the onset in April 2003 of cardiovascular problems that limit his ability to work. Over the objection of respondent, Ms. Boudreau testified as to various entries in her case activity record and certain aspects of the process by which she reached her decisions to reject the offer in compromise and close petitioner's case. The Court noted respondent's objections but reserved its ruling.

B. Positions of the Parties

1. Respondent's Position

Respondent's relevancy objection is based on the fact that petitioner's underlying tax liability was not raised at the hearing and is not before the Court. Accordingly, respondent argues, the appropriate standard for our review of the

determination is abuse of discretion and the appropriate scope of review, pursuant to the record rule, is the hearing record. The record rule is the general rule of administrative law that a court can engage in judicial review of an agency action only on the basis of the record amassed by the agency. 2 Pierce, Administrative Law, sec. 11.6, at 822 (4th ed. 2002); see <u>United States v. Carlo Bianchi & Co.</u>, 373 U.S. 709, 714 (1963). Respondent recognizes that there are exceptions to the general rule; e.g., "where the administrative record fails to disclose the factors considered by the agency",[3] "where necessary for background information",[4] and "where the agency failed to consider all relevant factors".[5] Nevertheless, respondent argues that none of those exceptions exist here.

Respondent also recognizes that, recently, in <u>Robinette v. Commissioner</u>, 123 T.C. 85, 101 (2004), we held that, in reviewing for an abuse of discretion under section 6330(d), we are not limited to the administrative record. In <u>Robinette</u>, we were asked to review an Appeals officer's determination that the

---

[3] Respondent cites <u>Citizens to Preserve Overton Park, Inc. v. Volpe</u>, 401 U.S. 402, 420 (1971), overruled on unrelated grounds by <u>Califano v. Sanders</u>, 430 U.S. 99, 105 (1977).

[4] Respondent cites <u>Thompson v. U.S. Dept. of Labor</u>, 885 F.2d 551, 555 (9th Cir. 1989).

[5] Respondent cites <u>Fla. Power & Light Co. v. Lorion</u>, 470 U.S. 729, 744 (1985); accord <u>Franklin Sav. Association v. Director</u>, 934 F.2d 1127, 1137-1138 (10th Cir. 1991).

Commissioner could proceed to collect unpaid taxes that had been compromised pursuant to an agreement that required the taxpayer to file his income tax returns on time for a period of 5 years (or face collection of the compromised amount). The taxpayer had breached the agreement by failing to file timely a return governed by the agreement. We received into evidence in addition to the administrative record both testimony and documents that showed (1) the taxpayer's good faith efforts to file his return in a timely manner, (2) the Appeals officer's refusal to consider certain evidence that the return was filed timely, and (3) his unwillingness at the hearing to consider in depth his authority to reinstate the offer in compromise. Id. at 103-104. We found the testimony and documents relevant to the question of whether the Appeals officer had abused his discretion in approving collection of the compromised taxes. Id. at 104. We found that he had abused his discretion, in part because he (1) "had a closed mind to the arguments presented on petitioner's behalf" and (2) "failed to consider the facts and circumstances of this case." Id. at 107.

If we do not adopt his implicit suggestion that we overrule Robinette v. Commissioner, supra, and apply the record rule in reviewing for abuse of discretion under section 6330(d), respondent asks that we distinguish the facts of this case from those of Robinette and exclude petitioner's and Ms. Boudreau's

trial testimony.  Respondent points out that, in <u>Robinette</u>, some of the Judges of the Court expressed reservation to, in all circumstances, allowing testimony or admitting other evidence not presented to Appeals.  E.g., <u>Robinette v. Commissioner</u>, 123 T.C. at 115 (Wells, <u>J.</u>, concurring) (distinguishing situation where taxpayer refuses to furnish relevant evidence requested at section 6330 hearing), <u>id.</u> at 116 (Thornton, <u>J.</u>, concurring) (suggesting it might be appropriate not to admit testimony or other evidence when the taxpayer has failed to cooperate in presenting relevant evidence at the section 6330 hearing), <u>id.</u> at 120 (Wherry, <u>J.</u>, concurring) ("[The holding of the case] should not be construed as sanctioning the dilatory introduction at trial of new facts or documents previously withheld and not produced at the Appeals hearing in order to justify reversal or remand of the Appeals or settlement officer's determination.").  Respondent argues that petitioner should not be allowed to introduce his testimony and the testimony of Ms. Boudreau because his conduct during the hearing was marked by missed due dates and constant requests for extensions of time to provide requested information.  Respondent points out that the only issue raised by petitioner was an offer in compromise, and he was given ample opportunity to present an acceptable offer before he missed yet another self-established due date (without warning Ms. Boudreau) and she closed the case.  As a result, respondent concludes, our

review of Ms. Boudreau's exercise of discretion should be based solely on the information presented to, and considered by, her.

### 2. Petitioner's Position

On brief, petitioner argues: "[T]he infirmities in the Respondent's Determination, record and procedures require the introduction of extrinsic evidence for an in depth review of the Respondent's Hearing."

### C. Discussion

### 1. Introduction

Petitioner's underlying tax liability is not at issue. The appropriate standard of review is, as respondent claims, abuse of discretion. See supra section II. of this report.

We decline to overrule Robinette v. Commissioner, 123 T.C. 85 (2004).[6] We shall, however, sustain respondent's objection to

---

[6] Recently, the Court of Appeals for the First Circuit reviewed a District Court judgment that, pursuant to sec. 6330(d)(1), had affirmed an Appeals Office determination made pursuant to sec. 6330(c)(3) that a levy to collect certain unpaid employment taxes and penalties could proceed. Olsen v. United States, 414 F.3d 144 (1st Cir. 2005), affg. 326 F. Supp. 2d 184 (D. Mass. 2004). The Court of Appeals upheld the record rule as defining the scope of judicial review of such a determination where, as in the case it was reviewing, the underlying tax liability is not in issue. See id. at 155. The Court of Appeals distinguished Robinette v. Commissioner, 123 T.C. 85 (2004), on the ground that it is premised on considerations that are unique to the Tax Court. Olsen v. United States, supra at 154 n.9. Therefore, we are not required by the doctrine of Golsen v. Commissioner, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971), to follow Olsen with respect to the appropriate scope of our review, notwithstanding that, barring stipulation of the
(continued...)

the admission of petitioner's trial testimony and, with one exception, also sustain it with respect to the admission of Ms. Boudreau's trial testimony. Our reasons are as follows.

### 2. Petitioner's Trial Testimony

In Robinette v. Commissioner, supra, we admitted testimony and documents not provided to Appeals on a showing that the evidence presented at trial related to issues raised at the taxpayer's section 6330 hearing and was relevant and admissible under the Federal Rules of Evidence.

The sole issue raised by petitioner at the section 6330 hearing was a collection alternative; i.e., the offer in compromise. Petitioner submitted to Ms. Boudreau an IRS Form 656, Offer in Compromise, on which he checked boxes indicating that the basis of the offer was either doubt as to collectibility or effective tax administration. He indicated on the form that there were special circumstances (which he may have neglected to describe). During the October 3 meeting, Ms. Boudreau asked Mr. Burke to describe petitioner's special circumstances. Mr. Burke responded, but not fully, since petitioner had prohibited him from discussing the nature of petitioner's illness. At trial, Mr. Burke stated that petitioner wished to testify so that he

---

[6](...continued)
parties to the contrary, appeal of this case would lie to the Court of Appeals for the First Circuit. See sec. 7482(b).

could explain why he had failed to pay the 1992-2001 liability as it came due. That explanation, claimed Mr. Burke, would convince the Court that it would not have been contrary to public policy for Ms. Boudreau to have accepted the offer in compromise. On brief, petitioner argues that he qualifies for an offer in compromise based on "equity"; i.e., "requiring the Respondent to act fairly in compromising outstanding taxes in those instances where a rigid interpretation of the Respondent's rules * * * precludes the resolution of an issue." Considerations of hardship, public policy, and equity figure in compromises grounded on both doubt as to collectibility and effective tax administration. See <u>supra</u> section III. of this report. We accept that, at the section 6330 hearing, petitioner attempted to convince Ms. Boudreau that special circumstances justified her agreeing to an offer in compromise based on hardship, public policy, or equity considerations. Therefore, as was the case in <u>Robinette v. Commissioner</u>, <u>supra</u>, petitioner's trial testimony relates to an issue he raised at the section 6330 hearing.

Nevertheless, petitioner's testimony regarding special circumstances is not relevant to the question of whether Ms. Boudreau abused her discretion in rejecting the offer in compromise to the extent the offer was grounded on effective tax administration. If for no other reason, that is because Ms. Boudreau's rejection of petitioner's offer to the extent that the

offer was grounded on effective tax administration was based on her conclusion that respondent could not collect the full 1992-2001 liability from petitioner (the potential of collection in full being a prerequisite to any consideration of special circumstances, such as hardship or equity, justifying an offer in compromise grounded on effective tax administration). We also think that petitioner's testimony is not relevant to the question of whether Ms. Boudreau abused her discretion in rejecting the offer to the extent the offer was grounded on doubt as to collectibility. The 1992-2001 liability ($275,777) exceeds both the amount Ms. Boudreau determined to be the reasonable collection potential of the case ($82,164) and the amount petitioner offered ($10,000). Because the offer was in an amount less than what she determined to be the reasonable collection potential, Ms. Boudreau could not consider the offer unless there were special circumstances. Nevertheless, petitioner did not timely provide her with all of the evidence that he now believes should be taken into account in determining whether there are special circumstances. An appeals officer does not abuse her discretion when she fails to take into account information that she requested and that was not provided in a reasonable time. As explained in the next paragraph, that is the case here with respect to petitioner's trial testimony. Here, evidence that petitioner might have presented at the section 6330 hearing (but

chose not to) is not admissible in a trial conducted pursuant to section 6330(d)(1) because it is not relevant to the question of whether the Appeals officer abused her discretion. See Fed. R. Evid. 401; Morlino v. Commissioner, T.C. Memo. 2005-203.

Petitioner was represented by counsel, Mr. Burke, at all stages of the section 6330 hearing. Petitioner had been informed by Mr. Burke that, unless petitioner disclosed the nature of his illness, Ms. Boudreau would not take illness into account. Nevertheless, petitioner refused to disclose the nature of his illness until after Ms. Boudreau had twice decided to close his case for missed due dates and, in the second instance, lack of a viable collection alternative. Petitioner had more than an adequate opportunity to provide Ms. Beaudreau with all of the evidence he thought necessary to convince her of special circumstances during the course of the hearing and before May 12, 2003, when Ms. Boudreau decided that respondent's proposed collection action should stand. Moreover, petitioner does not claim any change in his circumstances arising after the conclusion of the hearing. See Magana v. Commissioner, 118 T.C. at 494 (an allegation of recent, unusual illness or hardship might warrant the consideration of that new argument). We did not in Robinette v. Commissioner, supra, sanction the dilatory introduction at trial of new facts or documents previously withheld and not produced at the section 6330 hearing in order to

justify reversal or remand of the Appeals office determination. See id. at 115, 116, 120 (Wells, Thornton, and Wherry, JJ., concurring, respectively).  Accordingly, as stated, petitioner's testimony with respect to special circumstances is not admissible because it is irrelevant.

### 3.  Ms. Boudreau's Trial Testimony

Petitioner wishes to introduce Ms. Boudreau's trial testimony to show infirmities in the determination, the hearing record, and the Appeals procedures applicable to section 6330 hearings.  Much of that testimony was in response to Mr. Burke's questions to Ms. Boudreau concerning the content of her case activity record and how she arrived at her decision to reject the offer in compromise.  Among other things, Mr. Burke questioned her as to abbreviations and notations in the case activity record, her use of national standards for determining necessary living expenses in evaluating offers in compromise, what factors she took into account in rejecting the offer, and whether she notified petitioner that he could appeal her decision to reject the offer in compromise.  On brief, petitioner catalogues the infirmities that he claims justify Ms. Boudreau's trial testimony:  The notice of determination fails to state what "current IRS policy and procedures" were being relied on by Ms. Boudreau and whether she rejected the offer in compromise based on doubt as to collectibility or effective tax administration.

Ms. Boudreau's case activity report contains unexplained notations and abbreviations.  Respondent made no transcript or recording of the hearing.  The records provided by respondent fail to include any information on "National Standards", "Local Standards", or "other basis for ascertaining 'allowable expenses'", or grounds for deviating from those national or local standards.

Those are not claims that petitioner made at the hearing. While in Robinette v. Commissioner, supra, we admitted at trial evidence not provided to Appeals on a showing that (besides being relevant and otherwise admissible under the Federal Rules of Evidence) the evidence related to issues raised at the taxpayer's section 6330 hearing, we did not say that such a showing is prerequisite to admissibility.  An irregularity in the conduct of the hearing or some defect in the record may not be apparent until after the hearing is concluded and the taxpayer receives notice of the resulting determination.  The circumstances may justify allowing the taxpayer to raise the issue at trial and introduce evidence notwithstanding the taxpayer's failure to raise the issue at the section 6330 hearing.[7]  We address each of

---

[7]  Even given application of the record rule, circumstances with respect to conduct of the hearing may justify supplementation of the record.  See, e.g., Olsen v. United States, 414 F.3d at 155 (in the context of a section 6330 hearing); Lands Council v. Powell, 395 F.3d 1019, 1030 (9th Cir.
(continued...)

the infirmities that petitioner claims justify the admission of Ms. Boudreau's testimony.

First, petitioner claims that the notice of determination fails to state the current policies and procedures relied on by Ms. Boudreau.  We have summarized the contents of the notice of determination (and attachment) in our findings of fact, and there is no question but that it addresses all of the issues required by law.  See sec. 6330(c); sec. 301.6330-1(e)(3), A-E10 & A-E1, Proced. & Admin. Regs.  Moreover, as respondent points out on brief, the policies and procedures of the IRS, as set forth in the law, accompanying regulations, and Internal Revenue Manual, are all available to the general public.[8]  Respondent concedes that petitioner could have questioned Ms. Boudreau about any policy or procedure that he believed she did not follow.  Instead, petitioner questioned her about her use of national standards for determining necessary living expenses in evaluating offers in compromise.  Such a discussion is not relevant in this particular case, argues respondent, because, with one exception, Ms. Boudreau accepted the living expenses claimed by petitioner in the collection information statements he submitted to her when

---

[7](...continued)
2005); Orion Intl. Techs. v. United States, 60 Fed. Cl. 338, 343-344 (2004).

[8] See supra note 2 for direction to the Internal Revenue Manual.

she decided that the offer in compromise was unacceptable. The one exception was her disallowance of an expense characterized by petitioner as being attributable to secured debt, when, in truth, as petitioner later admitted, the expense was attributable to unsecured credit card debt (which, according to the collection information statement petitioner filled out, generally cannot be claimed as a necessary living expense). We agree with respondent that, since national standards for determining necessary living standards did not enter into her decision to reject the offer in compromise, Ms. Boudreau's testimony on that score is irrelevant, and we exclude it on that basis. See Fed. R. Evid. 401.

It is true that the notice of determination does not state Ms. Boudreau's reason (or reasons) for rejecting the offer in compromise. An attachment to the notice states only that the offer in compromise cannot be accepted under current IRS policy and procedures. The parties, however, have stipulated a copy of the Form 5402-c, Appeals Transmittal and Case Memo, submitted by Ms. Boudreau on May 14, 2003, to her supervisor. As we have found, the Form 5402-c does set forth in detail Ms. Boudreau's analysis leading to her rejection of the offer in compromise on both of the grounds (doubt as to collectibility and effective tax administration) put forth by petitioner. The hearing record is clear that Ms. Boudreau rejected the offer in compromise on both grounds advanced by petitioner, and no testimony by her on that

score is necessary for us to review the determination.  See Fed. R. Evid. 403 (waste of time or needless presentation of cumulative evidence grounds for excluding relevant evidence).

Ms. Boudreau's case activity report does contain unexplained notations and abbreviations, and her testimony is necessary to explain those notations and abbreviations.  Therefore, that testimony is admissible.

It is also true, as petitioner claims, that there is no transcript or recording of the hearing.  No provision of section 6330 requires the recording of a section 6330 hearing, and, in fact, section 301.6330-1(d)(2), A-D6, Proced. & Admin. Regs., states:  "A transcript or recording of any face-to-face meeting or conversation between an Appeals officer or employee and the taxpayer or the taxpayer's representative is not required."  Moreover, petitioner never asked to record Mr. Burke's meeting with Ms. Boudreau.  Cf. Keene v. Commissioner, 121 T.C. 8, 19 (2003).  Here, we need ascertain only whether Ms. Boudreau abused her discretion when she did not accept a compromise based on petitioner's insistence that he could pay no more than approximately 4 percent of his uncontested tax liability and concluded that, under the circumstances, the use of the levy process was "no more intrusive than necessary."  Sec. 6330(c). Petitioner's offer, his responses and lack thereof to Ms. Boudreau's requests, and her conclusions, are adequate for such

review.  See Fed. R. Evid. 403; cf. <u>Olsen v. United States</u>, 414 F.3d 144, 155 (1st Cir. 2005).

Petitioner complains that the records provided by respondent contain no information on national or local living expense standards.  While that is true, the Internal Revenue Manual, which is available to petitioner on the IRS Web site,[9] discusses the national standards, local standards, and other bases for determining allowable expenses when evaluating offers in compromise.  See, e.g., IRM secs. 5.8.5.5.1 through 5.8.5.5.3 (Sept. 1, 2005).  Moreover, as described <u>supra</u>, Ms. Boudreau allowed in full petitioner's validly claimed expenses.  An Appeals officer does not abuse her discretion when she allows a taxpayer's claimed expenses.  See <u>Schulman v. Commissioner</u>, T.C. Memo. 2002-129.  Ms. Boudreau's testimony describing national or local expense standards is, therefore, irrelevant.  See Fed. R. Evid. 401.

In summary, we shall allow into evidence Ms. Boudreau's testimony explaining notations and abbreviations in her case activity report and exclude the remainder of her testimony.

D.  <u>Conclusion</u>

Respondent's objection to the admission of petitioner's testimony is sustained.  Respondent's objection to the admission

---

[9]  See <u>supra</u> note 2.

of Ms. Boudreau's testimony is sustained in part and overruled in part.

VI.  Abuse of Discretion

A.  Introduction

We must now decide whether Ms. Boudreau abused her discretion in determining that respondent may proceed by levy to collect the unpaid tax.  Petitioner claims that Ms. Boudreau did, because (1) acceptance of an offer in compromise was in the best interests of respondent and petitioner and (2) Ms. Boudreau improperly and prematurely concluded the hearing.

B.  The Appeals Officer Did Not Err in Rejecting the Offer in Compromise

We do not conduct an independent review of what would be an acceptable offer in compromise.  Fowler v. Commissioner, T.C. Memo. 2004-163.  The extent of our review is to determine whether the Appeals officer's decision to reject the offer in compromise actually submitted by the taxpayer was arbitrary, capricious, or without sound basis in fact or law.  Skrizowski v. Commissioner, T.C. Memo. 2004-229; Fowler v. Commissioner, supra; see Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

Ms. Boudreau concluded that petitioner could not pay his liability (the 1992-2001 liability) in full and, therefore, did not qualify for an offer in compromise based on effective tax administration.  Certainly, her conclusion about petitioner's

inability to pay in full agrees with the information petitioner provided her, and we see no error in that conclusion or in her decision, based on that conclusion, to reject effective tax administration as a ground for compromising the 1992-2001 liability. Section 301.7122-1(b)(3)(ii), Proced. & Admin. Regs., makes the ability to make full payment a precondition to any offer in compromise based on effective tax administration.[10]

Nor do we see any error in Ms. Boudreau's decision to reject petitioner's offer of $10,000 in settlement of the 1992-2001 liability of $275,777 on the ground of doubt as to collectibility. She reviewed the information submitted by petitioner during the hearing. She found that petitioner was operating a business and earning more than $30,000 a year. Combined with his monthly pension income, and after subtracting

---

[10] In his reply brief, petitioner, for the first time, raises a challenge to sec. 301.7122-1, Proced. & Admin. Regs., in so far as it sets forth the requirements that a taxpayer must meet to qualify for a compromise on the basis of effective tax administration. Petitioner bases his challenge on changes made to sec. 7122 by the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3462(a) and (c)(1), 112 Stat. 764, 766. See H. Rept. 105-599, at 287-289 (1998), 1998-3 C.B. 747, 1041-1043 (addressing effective tax administration). That argument is raised too late for consideration. See Rule 334(b)(4); Aero Rental v. Commissioner, 64 T.C. 331, 338 (1975); Kelly v. Commissioner, T.C. Memo. 1996-529. Petitioner does not lose much by our so ruling, since, as described supra sec. III. of this report, the same factors are taken into account in considering offers in compromise grounded on effective tax administration and those grounded on doubt as to collectibility based on special circumstances.

his claimed expenses, she found that, from his net monthly income alone, he could, over time, afford to pay more than $10,000 towards the 1992-2001 liability.[11]  She also calculated that he had net realizable equity of $30,204, which was more than the $10,000 he had offered.  She calculated a reasonable collection potential of $82,164.  Because the offer was less than the reasonable collection potential she had calculated, the offer was, in the absence of special circumstances, unacceptable under the Commissioner's procedures for the submission and processing of offers in compromise.  See Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517.  Petitioner has not challenged Rev. Proc. 2003-71, supra.  Moreover, petitioner provided Ms. Boudreau with insufficient information to justify her accepting an offer based on special circumstances in any amount less than what she had calculated as the reasonable collection potential of the case. Therefore, we must determine only whether the Appeals officer's calculations are reasonable.  See, e.g., Galvin v. Commissioner, T.C. Memo. 2003-263; McCorkle v. Commissioner, T.C. Memo. 2003-34; Schulman v. Commissioner, T.C. Memo. 2002-129.  We conclude that her computations were reasonable, and she did not err in

---

[11]  Ms. Boudreau did not calculate the present value of his net monthly income, and we are unsure whether her assumption in calculating what petitioner could pay is that petitioner would make installment payments.  Taking into account any reasonable interest rate, however, the present value of petitioner's net monthly income is still a substantial amount.

rejecting the offer in compromise based on doubt as to collectibility.

C. The Appeals Officer Did Not Improperly and Prematurely Conclude the Hearing

1. Introduction

On brief, petitioner argues not only that Ms. Boudreau prematurely concluded the hearing but also that she (1) did not conduct the hearing in good faith, (2) failed to negotiate during consideration of the offer, (3) was inflexible in considering petitioner's case, (4) was biased in concluding that the hearing had to be promptly concluded, and (5) was not impartial since she both conducted the hearing and negotiated the offer. Petitioner further argues bias in the section 6330 hearing procedures because (1) there was no administrative review of Ms. Boudreau's rejection of the offer, and (2) petitioner had no right to appeal Ms. Boudreau's rejection of the offer.

2. Hearing Was Not Prematurely Concluded

In Clawson v. Commissioner, T.C. Memo. 2004-106, fewer than 3 months passed between the taxpayer's filing a request for a section 6330 hearing concerning a proposed levy and an adverse determination by the Appeals officer. Approximately 1 month passed after the Appeals officer's offer of a telephonic conference until the adverse determination, and only 9 days passed after the telephone conference until the adverse

determination.  The taxpayer argued that the Appeals officer abused his discretion because he reached his decision to sustain the proposed levy in "barely one month" after he contacted petitioners.  We held:  "[T]here is neither requirement nor reason that the Appeals officer wait a certain amount of time before rendering his determination as to a proposed levy."  As authority, we cited section 301.6330-1(e)(3), Q&A-E9, Proced. & Admin. Regs., which provides that there is no period of time in which Appeals must conduct a section 6330 hearing or issue a notice of determination:  "Appeals will, however, attempt to conduct a * * * [section 6330 hearing] and issue a Notice of Determination as expeditiously as possible under the circumstances."

In this case, Ms. Boudreau reached her decision that respondent's collection action should stand more than 8 months after she was assigned to petitioner's case.  On being assigned to the case, she contacted petitioner's representative, Mr. Burke, and promptly met with him.  She received from him an offer in compromise and certain supporting information.  She requested from him additional information and documents necessary for her to review the offer.  Mr. Burke missed numerous due dates for submitting additional information, and, on one occasion, she closed the case because of Mr. Burke's failure to meet submission due dates.  It took Mr. Burke more than 4 months to provide to

Ms. Boudreau the last of the information necessary for her to review the offer in compromise. When her review showed that the offer was not acceptable, she gave petitioner the opportunity to submit an acceptable offer. Again, due dates were missed, and no new offer was submitted. Ms. Boudreau waited almost 2 months for an acceptable offer before deciding that respondent's proposed collection action should stand. Eleven days after she made her decision (and 6 days before the notice of determination was issued), Mr. Burke finally disclosed to Ms. Boudreau the nature of petitioner's illness. Ms. Boudreau considered that information and decided that her decision should stand. We do not think that Ms. Boudreau prematurely concluded the hearing. See Roman v. Commissioner, T.C. Memo. 2004-20 (reasonable to issue adverse section 6330 determination when, after 6 weeks, taxpayer had failed to submit information requested with respect to offer in compromise); see also Olsen v. United States, 414 F.3d at 154 ("Given * * * [the taxpayer's] failure to cooperate fully despite the appeals officer's repeated attempts to obtain the information deemed necessary to evaluate the offer (and, in particular, * * * [the taxpayer's] claimed inability to pay), we cannot say the appeals officer abused her discretion in determining the collection action to be 'no more intrusive than necessary.'").

### 3. Other Arguments

Respondent argues that we should disregard petitioner's other arguments since he did not raise them in the petition. See Rule 331(b)(4). We construe the petition broadly, however, see Rule 31(d), and give petitioner the benefit of the doubt that his averment that Ms. Boudreau improperly concluded the hearing encompasses his other arguments. In any event we have made extensive findings from the record, which we think belie petitioner's claims. We address each claim briefly.

Petitioner claims: Ms. Boudreau "did not conduct the hearing in good faith." As an example, petitioner recites that Ms. Boudreau made her initial contact with petitioner by a letter sent on September 16, 2002, which scheduled a meeting for September 30, 2002. Petitioner recites: "This action is assuredly indicative of the Settlement Officer's predisposition toward an expedient conclusion of Petitioner's matter." We do not reach that conclusion since, when Mr. Burke telephoned Ms. Boudreau on September 17, 2002, apparently in response to her letter, she agreed to move the meeting to October 3, 2002. Petitioner complains that Ms. Boudreau's "lack of economic perspicacity" reflected in her calculations (using national and local expense standards) "shows that the Hearing was not conducted in good faith." We cannot agree with that complaint since Ms. Boudreau adopted petitioner's claimed expenses as a

basis for her calculations. Considering all of petitioner's claims of bad faith, we fail to find that Ms. Boudreau conducted the hearing in bad faith.

Petitioner claims: Ms. Boudreau "did not act with flexibility but with a clear predisposition toward an inflexible and expeditious determination of the Petitioner's matter." The facts in evidence hardly lead to that conclusion. Ms. Boudreau tolerated numerous missed due dates. She reopened the case after she had closed it on account of a missed due date. After rejecting the offer in compromise, she invited another offer. When that offer was not timely received, she closed the case but considered reopening it when Mr. Burke belatedly telephoned her. We do not find that Ms. Boudreau was inflexible. While she may have been predisposed to an expeditious conclusion of petitioner's case, we see nothing wrong with that, given the facts before us.

Petitioner claims: Ms. Boudreau "was biased by her belief that the hearing had to be promptly concluded." Besides the fact that Ms. Boudreau rejected the offer and, after almost 2 months, gave up on petitioner's promise to submit a new offer, petitioner has shown no facts that would support his claim of bias. As we made plain supra p. 35 of this report, there is no requirement that an Appeals officer wait a certain amount of time

before concluding a section 6330 hearing.  Petitioner has failed to show bias.

Petitioner claims:  Ms. Boudreau "was not impartial as [since] she both conducted the hearing and negotiated the offer." That, however, is precisely the scheme contemplated by section 6330.  Section 6330(c)(2)(A)(iii) permits a taxpayer to offer collection alternatives, including offers in compromise, at a section 6330 hearing, and section 6330(c)(3) provides that the determination of the Appeals officer conducting the section 6330 hearing shall take into consideration any collection alternative offered by the taxpayer at the hearing.  Petitioner argues:  "It is constitutionally impermissible for the Respondent to assign the same person to negotiate an OIC [offer in compromise] and thereafter rule on the fairness of her negotiations."  Section 6330(b)(3) ensures a measure of impartiality by requiring that, unless the taxpayer waives the requirement, the section 6330 hearing be conducted by an Appeals officer who has had no prior involvement with the unpaid tax at issue in the hearing. Petitioner's claim is without merit.

Petitioner claims:  Ms. Boudreau "failed to negotiate during the consideration of the OIC."  Petitioner argues:  "In failing to negotiate a reasonable offer the Settlement Officer failed to meet her responsibility to hold a fair hearing at which she was to negotiate, be flexible and to make it easier for taxpayers to

enter into OICs." We need not in this case decide whether the Secretary "must" negotiate an offer in compromise. See <u>Olsen v. United States</u>, 414 F.3d at 157 ("section 7122 commits the acceptance and negotiation of offers in compromise to the Secretary's discretion"). In this case, although Ms. Boudreau rejected the offer in compromise, she told petitioner what would be an acceptable offer in compromise and provided petitioner almost 2 months to submit a new offer before she closed the case. In that regard, there was no error in her actions. Cf. <u>id.</u> (with respect to taxpayer's argument that Appeals officer failed to negotiate and make a counter-offer during course of section 6330 hearing: "Given * * * [the taxpayer's] sluggish and inadequate response, the appeals officer was certainly not required, nor was she able, to make a meaningful counter-offer.").

Finally, petitioner complains that the absence of administrative review of the rejected offer in compromise as well as the Secretary's failure to grant him administrative appeal rights evidences bias in the section 6330 hearing procedures.[12] Here, the record shows that Ms. Boudreau's decision to reject the offer was reviewed and approved by her supervisor. Moreover, petitioner does have the right to appeal; viz, to this Court.

---

[12] Sec. 301.7122-1(f), Proced. & Admin. Regs., requires administrative review of a rejected offer in compromise and accords the taxpayer a right of appeal.

See sec. 6330(d).  In response to these same arguments, the Court of Appeals for the First Circuit has said:

> Represented by counsel, * * * [the taxpayer] decided to submit his offer in compromise to the IRS Office of Appeals pursuant to § 6330 in the first instance. Under § 6330, he had no right to more than one hearing nor to a hearing before anyone other than the Office of Appeals.  See 26 U.S.C. § 6330(b) (2000).  Moreover, if a taxpayer desires to challenge an appeals officer's determination, § 6330 provides for judicial review, which * * * [the taxpayer] elected to pursue, not another administrative appeal.  Id. § 6330(d).

Olsen v. United States, supra at 157.  Petitioner's complaint is without merit.

### 4.  Conclusion

We find no merit in petitioner's arguments that Ms. Boudreau improperly and prematurely concluded the hearing.

### D.  Conclusion

Ms. Boudreau did not abuse her discretion in determining that respondent may proceed by levy to collect the unpaid tax.

### VII.  Conclusion

To reflect the foregoing,

Decision will be entered

for respondent.