T.C. Memo. 2016-70

UNITED STATES TAX COURT

DAVID W. STRONG, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1358-14L.            Filed April 19, 2016.

<u>Martin J. Martelle</u>, for petitioner.

<u>Nhi T. Luu</u> and <u>Catherine J. Caballero</u>, for respondent.

MEMORANDUM OPINION

NEGA, <u>Judge</u>: Pursuant to section 6330(d)(1),[1] petitioner seeks review of

respondent's determination to proceed with collection by levy of unpaid trust fund

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*2] recovery penalties (TFRPs) assessed against him. The sole issue before the Court is whether the Internal Revenue Service (IRS) Appeals Office abused its discretion when evaluating petitioner's offer-in-compromise (OIC) for doubt as to collectibility.

Background

All of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. The parties have agreed to submit the case for decision without trial under Rule 122. Petitioner resided in Idaho when the petition was filed.

Petitioner operates a window and gutter installation business. Petitioner initially operated the business as Boise Gutter, Inc., a C corporation. He later formed Strong Siding & Window LLC, a single-member disregarded limited liability company that operated under the assumed business name Boise Gutter. Boise Gutter uses a cash basis accounting method.

On May 1, 2012, respondent issued a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing Under I.R.C. 6330, with respect to petitioner's unpaid TFRPs for taxable periods ending: December 31, 2006; March 31, 2007; December 31, 2009; and December 31, 2010. In response to this notice petitioner timely submitted Form 12153, Request for a Collection Due Process or

**[\*3]** Equivalent Hearing. The Form 12153 permitted petitioner to indicate the nature of his CDP hearing request by checking boxes selectively. Petitioner checked "I Cannot Pay Balance" on his Form 12153.

Along with his Form 12153 petitioner submitted a completed Form 433-B, Collection Information Statement for Businesses. Petitioner's Form 433-B reported Boise Gutter's monthly income as $47,812[2] and monthly expenses as $44,894. Thereafter, petitioner submitted a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals. Petitioner's Form 433-A reported gross monthly business income of $63,697 and monthly business expenses of $61,715. Form 433-A also reported business assets of: (1) $15,663 in a U.S. Bank checking account and a D.L. Evans Bank savings account and (2) $7,200 used for the production of income.

On October 12, 2012, respondent received Form 656, Offer in Compromise (OIC), from petitioner, which proposed a lump-sum offer of $11,500 based upon doubt as to collectibility. The OIC sought to compromise: (1) an Individual Master File (IMF) balance owing totaling $67,462, which included the TFRPs for taxable periods ending December 31, 2006, March 31, 2007, December 31, 2009, and December 31, 2010, and (2) a Business Master File (BMF) balance owing

---

[2]All monetary amounts are rounded to the nearest dollar.

[*4] totaling $105,952. Petitioner did not indicate on Form 656 any exceptional circumstances in his case such that acceptance of his OIC would promote effective tax administration. Petitioner attached a letter to the Form 656 stating that Boise Gutter operates on a cash basis and that although his business bank account balances were high, Boise Gutter had offsetting payables for normal business expenses.

On November 30, 2012, petitioner submitted two amended OICs, which did not amend the total amount of his original offer, $11,500, but rather allocated that amount between petitioner's IMF tax liabilities and his BMF tax liabilities. The amended offers did not indicate any exceptional circumstances such that acceptance of his OIC would promote effective tax administration.

Acting through letters, faxes, and telephone calls, a settlement officer (SO) at the IRS Appeals Office requested and petitioner provided additional information, substantiation, and explanations of the representations set forth on petitioner's OICs and Form 433-A and Form 433-B. Specifically, petitioner, through his representative, provided: (1) Boise Gutter's profit and loss (P&L) statements for January through September 2012 and January through July 2013; (2) Boise Gutter's distribution reports for 2012 and 2013, which showed distributions that petitioner received from his business; (3) petitioner's business

[*5] bank statements at U.S. Bank for May, June, and July 2012; (4) petitioner's business bank statements at D.L. Evans Bank for April, May, and June 2012; (5) petitioner's 2011 and 2012 Federal income tax returns; and (6) Boise Gutter's accounts payable and accounts receivable reports as of September 30, 2012. Boise Gutter's accounts payable report showed that of its total payables of $53,080, $30,746 was owed to Dennis B. Strong and Shirley J. Strong.

On November 23, 2013, the SO reviewed petitioner's documents and noted that the U.S. Bank account had an average ending balance over a three-month period from May through July 2012 of $14,655. The SO concluded that according to petitioner's business bank account statements, Boise Gutter had funds to make monthly payments, maintain deposits, and pay business expenses. The SO determined that she would not include the funds in petitioner's business bank accounts in determining petitioner's reasonable collection potential (RCP) because petitioner needed the funds to continue to produce income and pay his business expenses. The SO included $33,952 of Boise Gutter's accounts receivable that was less than 90 days past due and that was reported on its accounts receivable report dated September 30, 2012, in determining petitioner's RCP. The SO calculated petitioner's RCP as $38,839. The SO summarized her findings in a letter to petitioner dated November 25, 2013.

**[\*6]**  On December 11, 2013, petitioner's representative faxed a letter to the SO in response to her analysis.  Petitioner's representative explained that the SO should not consider Boise Gutter's accounts receivable as business assets for purposes of calculating petitioner's RCP because Boise Gutter needed the accounts receivable to continue to operate.  The letter referred the SO to previously submitted accounts payable and accounts receivable reports dated September 30, 2012, that showed that Boise Gutter's accounts payable exceeded its accounts receivable by $18,734.  The letter also argued, per the Internal Revenue Manual (IRM) pt. 5.8.5.14 (Oct. 22, 2010), that accounts receivable may be treated as future income when it is determined that liquidation of a receivable would be detrimental to the continued operation of an otherwise profitable business.  Finally, the letter requested that petitioner's case be reviewed by a supervisor before the SO made a determination.

That same day, the SO noted in her case activity record that she had reviewed petitioner's representative's position that Boise Gutter's accounts receivable should not be considered business assets because they were necessary to operate Boise Gutter.

On December 17, 2013, the SO and her manager reviewed all the documents that petitioner provided and agreed that Boise Gutter's accounts receivable were

**[\*7]** business assets that should be included in petitioner's RCP. Specifically, they noted that petitioner's 2013 P&L statement was inconsistent with petitioner's 2013 distribution report. The SO also determined that the 2013 distribution report was not necessary to her analysis because the financial documents petitioner provided for that year were incomplete and she could complete her analysis using the 2012 documents provided.

Petitioner did not make another amended OIC in response to the SO's analysis. On December 23, 2013, respondent issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 of the Internal Revenue Code (notice of determination).

In the notice the SO evaluated petitioner's OIC based upon doubt as to collectibility and outlined her calculation of petitioner's RCP. The SO also provided a detailed history of petitioner's CDP case. Specifically, in determining that petitioner's RCP should include Boise Gutter's accounts receivable that were less than 90 days old, the SO considered relevant IRM sections, including IRM pt. 5.8.5.14, cited by petitioner's representative. The SO also noted discrepancies between Boise Gutter's 2012 distribution report and its 2012 P&L statement for January through September. Specifically, Boise Gutter's 2012 distribution report listed $41,319 in distributions to petitioner for the year (for a $3,443 monthly

[*8] average) while Boise Gutter's 2012 P&L statement through September 2012 claimed $2,982 in net average business income and a $233 "draw" from payroll for this period. The SO noted that although there were major discrepancies between Boise Gutter's 2013 P&L statement for January through July and its 2013 distribution report, the 2013 P&L statement was still considered.

In her recap and analysis in the notice of determination the SO noted that an average monthly balance of $14,855 in petitioner's U.S. Bank account, allowing for unexpected expenses, was sufficient to operate petitioner's business. She also noted: "The account receivable is money owed and yet the business continues to operate and maintain high monthly balance based on the bank statements provided." The SO concluded that according to all the documentation submitted and considered, the RCP of $38,839 was reasonable. Most of the SO's calculation of petitioner's RCP came from 50% of the fair market value of petitioner's U.S. Bank checking account less encumbrances of -$4,253, and Boise Gutter's accounts receivable of -$33,952. The Notice of Determination sustained the proposed levy action and rejected petitioner's OIC of $11,500 because it did not equal or exceed petitioner's RCP.

## Discussion

**[*9]** Petitioner asserts that the SO improperly rejected his OIC. We review for abuse of discretion the SO's determination to reject petitioner's OIC. See Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 182 (2000). We do not conduct an independent review of what would be an acceptable OIC or substitute our judgment for that of the Appeals Office. See McClanahan v. Commissioner, T.C. Memo. 2008-161. Rather, an SO's decision to reject an OIC will not be disturbed unless it is arbitrary, capricious, or without sound basis in fact or law. See, e.g., Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006); Hansen v. Commissioner, T.C. Memo. 2007-56, aff'd in part, vacated in part sub nom. Keller v. Commissioner, 568 F.3d 710 (9th Cir. 2009). Generally, we have found no abuse of discretion where the Appeals Office has followed the Commissioner's guidelines to ascertain a taxpayer's RCP and has rejected a taxpayer's collection alternative on that basis. Litwak v. Commissioner, T.C. Memo. 2009-292, aff'd, 473 F. App'x 709 (9th Cir. 2012); Romero v. Commissioner, T.C. Memo. 2009-264; McClanahan v. Commissioner, T.C. Memo. 2008-161; Lemann v. Commissioner, T.C. Memo. 2006-37.

**[\*10]** At the CDP hearing the taxpayer may raise any relevant issue with regard to the collection activities, including alternative means of collection such as an OIC. Sec. 6330(c)(2)(A); see also Sego v. Commissioner, 114 T.C. at 609. Taxpayers are expected to provide all relevant information requested by the SO, including financial statements, for consideration of the facts and issues involved in the hearing. Sec. 301.6330-1(e)(1), Proced. & Admin. Regs.

Section 7122(a) authorizes the Secretary to compromise a taxpayer's income tax liability. In general, the decision to accept or reject an offer as well as the terms and conditions agreed to are left to the discretion of the Commissioner. Sec. 301.7122-1(a)(1), (c)(1), Proced. & Admin. Regs. The grounds for the compromise of a tax liability are doubt as to liability, doubt as to collectibility, and the promotion of effective tax administration. Id. para. (b). Petitioner bases his OIC on doubt as to collectibility, which "exists in any case where the taxpayer's assets and income are less than the full amount of the liability." Id. subpara. (2).

The Commissioner will generally compromise a liability on the basis of doubt as to collectibility only if the liability exceeds the taxpayer's RCP, "i.e., that amount, less than the full liability, that the IRS could collect through means such as administrative and judicial collection remedies". Murphy v. Commissioner,

[*11] 125 T.C. at 309; Salazar v. Commissioner, T.C. Memo. 2008-38, aff'd, 338 F. App'x 75 (2d Cir. 2009).

Petitioner argues that the SO abused her discretion by treating his accounts receivable less than 90 days past due as business assets that were includible in the determination of his RCP. Petitioner states that the notice of determination cited only deposit account balances from peak business months as the sole facts and evidence for the determination. Petitioner also states that the SO's analysis failed to set forth any explanation for disregarding documents that petitioner submitted showing that: (1) petitioner's accounts payable significantly offset any accounts receivable and (2) bank account balances which reflected funds set aside from busier summer months would be necessary to cover the cost of petitioner's business during slower winter months. Finally, petitioner argues that the SO did not indicate that she reviewed these documents as part of her analysis. Specifically, petitioner contends that the SO neglected to incorporate income and expense figures from his tax returns in her analysis to calculate his average income for purposes of RCP.

Respondent argues that the SO properly reviewed petitioner's business bank account statements and concluded that Boise Gutter had funds in these accounts to pay its business expenses. Respondent argues that the SO subsequently followed

[*12] the guidelines in the IRM, including IRM pt. 5.8.5.14, and properly valued Boise Gutter's accounts receivable less than 90 days past due in full for purposes of calculating petitioner's RCP and acted within her discretion to reject petitioner's OIC, which he put forth on the sole ground of doubt as to collectibility. Furthermore, respondent argues that petitioner is attempting to raise a new issue on brief--specifically, that the SO abused her discretion in not addressing petitioner's special circumstances or economic hardship in the notice of determination.

As a preliminary matter, we find that petitioner did not raise a new issue on brief. Petitioner did not need to indicate on his Form 656 any exceptional circumstances in his case such that acceptance of his OIC would promote effective tax administration for the Court to review his argument. Petitioner does not argue any exceptional circumstances; rather, he argues the SO abused her discretion when she failed to consider all the facts and evidence presented and decided to treat Boise Gutter's accounts receivable as business assets. This issue is properly reviewable by the Court.

On the basis of the record, petitioner's argument does not pass muster. The record clearly shows the SO took into account all relevant documents submitted. The SO's case activity record shows that on December 11, 2013, she reviewed

[*13] petitioner's representative's contention that Boise Gutter's accounts receivable should not be considered business assets and that she consulted with her manager soon thereafter. Still, petitioner complains that the SO considered business account balances from only peak business months in determining that the accounts could adequately satisfy petitioner's expenses. However, petitioner provided the SO with bank statements from only these peak business months; he did not provide material evidence to substantiate his claim that the high business account balances were necessary to cover the cost of his business during slower winter months. Although petitioner provided the SO with his tax returns to show income and expenses from Boise Gutter, a tax return is merely a statement of a taxpayer's claim; it does not establish the truth of the matters set forth therein. See Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979); Roberts v. Commissioner, 62 T.C. 834, 837 (1974).

Many of the documents petitioner submitted, such as Boise Gutter's distribution reports and P&L statements, were inconsistent with one another. Furthermore, Boise Gutter's accounts payable, which petitioner contends offset its accounts receivable for 2012, showed that most of the payables were apparently owed to petitioner's relatives as opposed to third-party vendors. Petitioner simply did not provide the SO with adequate evidence to show that the liquidation of

[*14] Boise Gutter's accounts receivable would be detrimental to its survival. <u>See</u> IRM pt. 5.8.5.14. These facts and the fact that petitioner had an RCP more than three times his proposed OIC show that the SO did not abuse her discretion in rejecting the OIC. <u>See, e.g.</u>, <u>Moore v. Commissioner</u>, T.C. Memo. 2013-278. We therefore sustain the SO's determination. In reaching our holding, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.