T.C. Memo. 2016-217

UNITED STATES TAX COURT

RICHARD ISAAC FINE AND MARYELLEN OLMAN-FINE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23553-15L.                                Filed November 29, 2016.

Richard Isaac Fine and Maryellen Olman-Fine, pro sese.

Steven Mitchell Roth, for respondent.

MEMORANDUM OPINION

LAUBER, Judge:  In this collection due process (CDP) case, petitioners

seek review pursuant to sections 6320(c) and 6330(d)(1)[1] of the determination by

_____

[1]All statutory references are to the Internal Revenue Code in effect at all
relevant times, and all Rule references are to the Tax Court Rules of Practice and
(continued...)

[*2] the Internal Revenue Service (IRS or respondent) to uphold the filing of a notice of Federal tax lien (NFTL). Respondent has moved for summary judgment under Rule 121, contending that there are no disputed issues of material fact and that his determination to sustain the proposed collection action was proper as a matter of law. We agree and accordingly will grant the motion.

## Background

The following facts are based on the parties' pleadings and motions, including the attached declarations and exhibits. See Rule 121(b). Petitioners resided in California when they filed their petition.

Petitioners filed joint Federal income tax returns for tax years 2010-2012 but did not pay the tax shown as due on those returns. The IRS subsequently assessed the tax for all three years. On January 2, 2014, in an effort to collect these unpaid liabilities, the IRS sent petitioners a Final Notice of Federal Tax Lien and Notice of Your Right to a Hearing. Petitioners timely submitted a Form 12153, Request for a Collection Due Process or Equivalent Hearing. In their request petitioners stated that they could not pay the balances owed and sought a collection alternative in the form of an offer-in-compromise (OIC). Petitioners did

---

[1](...continued)
Procedure. We round all monetary amounts to the nearest dollar.

[*3] not indicate any intention to challenge the correctness of the tax liabilities that they had reported on their 2010-2012 returns.

Petitioners' case was assigned to Settlement Officer Geerlings (SO1) from the IRS Appeals Office. On January 29, 2015, SO1 held a face-to-face CDP hearing with petitioners. At the hearing SO1 indicated his willingness to recommend that petitioners' account be placed in currently not collectible (CNC) status. On March 13, 2015, SO1 sent petitioners a Form 12257, Summary Notice of Determination, Waiver of Right to Judicial Review of a Collection Due Process Determination, Waiver of Suspension of Levy Action, and Waiver of Periods of Limitation in Section 6330(e)(1). SO1 informed petitioners that they should execute Form 12257 and return it to him if they wished to pursue the CNC option.

One week later, on March 20, 2015, SO1 retired from the IRS without having received an executed Form 12257 from petitioners. The case was reassigned to Settlement Officer Honaker (SO2). He reviewed the administrative file and found inconsistencies in the documentary evidence petitioners had submitted. On April 23, 2015, SO2 sent a letter to petitioners asking them to explain these inconsistencies. He allowed them until May 14, 2015, to submit additional documents.

On May 14, 2015, petitioners submitted the Form 12257, which they had signed on March 24, 2015, and a Form 433-A, Collection Information Statement

**[\*4]** for Wage Earners and Self-Employed Individuals, with attached bank statements. Petitioners insisted that SO1 had already agreed to place their account in CNC status. SO2 explained that SO1 could only have made a recommendation to this effect; that the Form 12257 petitioners submitted would become effective only if countersigned by an Appeals Team Manager; and that no such approval had yet been given.

Between May and August 2015 SO2 reviewed petitioners' bank statements. He also reviewed third-party information reports, which petitioners had failed to submit, relating to their investment assets. On the basis of this review he determined that petitioners had monthly income of at least $9,994 and allowable monthly expenses of $7,450. Because petitioners could afford to pay the IRS $2,544 per month, he concluded that their account should not be placed in CNC status.

During the CDP process petitioners advanced numerous other contentions, including assertions that: (1) the IRS had failed to respond to their 2012 whistle-blower complaint asserting that Los Angeles County had made illegal contributions to California State judges' retirement accounts; (2) the IRS had improperly issued levy notices to them for tax years 2005 and 2006; and (3) petitioner wife had an outstanding claim for relief from joint and several liability for tax year

[*5] 2006. SO2 concluded that these issues were beyond the scope of petitioners' CDP hearing for tax years 2010-2012 and that he otherwise lacked authority to address these issues.

Petitioners did not submit any collection alternative to SO2 or raise any challenge to their underlying tax liabilities for 2010-2012. SO2 reviewed their administrative file and confirmed that the tax liabilities in question had been properly assessed and that all other requirements of applicable law and administrative procedure had been met. SO2 accordingly closed the case and, on August 17, 2015, issued petitioners a notice of determination sustaining the NFTL filing.

On September 16, 2015, petitioners timely petitioned this Court for review. In their petition they did not raise any specific challenge to SO2's determination. Rather, they asserted that the notice of determination was "invalid"; that it "contains false statements"; and that it "manifests bad faith, refusal to follow IRS Code and IRM and criminal conduct in violation of 18 U.S. Code Section 1519, amongst other things."

On June 22, 2016, respondent filed a motion for summary judgment, to which petitioners responded on August 1, 2016. In their response petitioners advanced numerous frivolous arguments, including assertions that respondent's motion "is a sham"; that respondent's counsel and SO2 are "violating statutes and

[*6] making false statements"; and that the documents attached to SO2's declaration, which constitute the administrative record of the CDP proceeding, do not constitute IRS "business records." Their only argument addressed to the merits is that the IRS should be bound by SO1's determination that their account should be placed in CNC status.

## Discussion

### A. Summary Judgment

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. Sundstrand Corp., 98 T.C. at 520. However, the nonmoving party may not rest upon mere allegations or denials of his pleadings but instead must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); see Sundstrand Corp., 98 T.C. at 520.

**[\*7]**   Petitioners have not shown that there is a genuine dispute for trial.  They assert that the documents attached to SO2's declaration, which constitute the administrative record of the CDP proceeding, do not constitute IRS "business records," but this assertion is meritless.  These documents themselves establish all facts that are material to resolution of this case, and we accordingly conclude that this case is appropriate for summary adjudication.

B.      Standard of Review

Petitioners do not challenge the amounts of their underlying tax liabilities for 2010-2012.[2]  In cases such as this, we review the IRS determination for abuse of discretion only.  Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law.  See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

---

[2]Petitioners filed returns for 2010-2012 reporting the tax liabilities at issue, and they did not challenge these underlying tax liabilities during the CDP hearing or in their petition to this Court.  They are thus precluded from challenging those liabilities now.  See Rule 331(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded."); Thompson v. Commissioner, 140 T.C. 173, 178 (2013) ("A taxpayer is precluded from disputing the underlying liability if it was not properly raised in the CDP hearing."); sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.

[*8] C.     Analysis

In deciding whether SO2 abused his discretion in sustaining the NFTL filing, we consider whether he:  (1) properly verified that the requirements of any applicable law or administrative procedure have been met; (2) considered any relevant issues petitioners raised; and (3) determined whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioners] that any collection action be no more intrusive than necessary."  See sec. 6330(c)(3).  Our review of the record establishes that SO2 analyzed the transcripts of petitioners' account and determined that the tax liabilities were properly assessed.  The only issue is whether petitioners raised any legitimate question concerning their entitlement to a collection alternative.

1.     Entitlement to CNC Status

To be entitled to have his account placed in CNC status, the taxpayer must demonstrate that, on the basis of his assets, equity, income, and expenses, he has no apparent ability to make payments on the outstanding tax liability.  See Foley v. Commissioner, T.C. Memo. 2007-242, 94 T.C.M. (CCH) 210, 212; Internal Revenue Manual (IRM) pt. 5.16.1.1 (Aug. 25, 2014).  A taxpayer's ability to make payments is determined by calculating the excess of income over necessary living

[*9] expenses. IRM pt. 5.16.1.2 (Jan. 1, 2016). An SO does not abuse his discretion when he employs local and national standards to calculate the taxpayer's expenses and ability to pay. See Friedman v. Commissioner, T.C. Memo. 2013-44, at *10 (noting that burden is on taxpayer to justify departure from local standards). In reviewing for abuse of discretion, the Court does not substitute its judgment for that of the SO or recalculate a taxpayer's ability to pay. See O'Donnell v. Commissioner, T.C. Memo. 2013-247, at *15.

In February 2015 SO1 indicated his willingness to recommend that petitioners' account be placed into CNC status. However, petitioners as of then had not provided him with a completed Form 433-A or with financial documents showing that their necessary living expenses exceeded their income. Nor had petitioners returned to SO1, as of the date he retired from the IRS, an executed Form 12257 formally requesting CNC relief.

Petitioners did submit an executed Form 12257 to SO2 on May 14, 2015, after the case was reassigned to him. However, a Form 12257 does not become effective until it has been approved and countersigned by an IRS Appeals Team Manager. Form 12257 explicitly states: "My agreement to the Summary Notice of Determination shown below, to waive judicial review and to waive the suspension of levy action under section 6330(e)(1), is effective upon the written approval

**[\*10]** by a person in the Office of Appeals with the authority to bind the IRS." The authority to bind the IRS to a CNC determination lies with the Appeals Team Manager. See IRM pt. 8.22.9.5.3 (Nov. 13, 2013).

After careful review of petitioners' Form 433-A and bank records, SO2 disagreed with SO1's recommendation that their account be placed in CNC status. He accordingly did not submit the Form 12257 for approval by an Appeals Team Manager. Because the Form 12257 that petitioners submitted on May 14, 2015, was never countersigned by an Appeals Team Manager, it never became effective and it did not bind the IRS. Petitioners have raised no material dispute of fact as to the correctness of this conclusion.

SO2 performed an independent evaluation to determine whether petitioners qualified for CNC status. He sought and obtained from petitioners additional financial information that was not available to SO1. After reviewing this information, SO2 concluded that petitioners could make monthly payments of $2,544 and that CNC status was therefore inappropriate. In reaching this conclusion, SO2 determined petitioners' monthly income and used prevailing national and local standards to compute their allowable monthly living expenses. Petitioners do not challenge SO2's determination in either respect, and we find that he did not abuse

**[\*11]** his discretion in concluding that they were not entitled to have their account placed in CNC status.

    2.    <u>Other Issues</u>

At their CDP hearing petitioners were entitled to make offers of collection alternatives, such as an OIC or an installment agreement. <u>See</u> sec. 6330(c)(2) and (3). On their Form 12153 petitioners expressed interest in an OIC, but they neglected to put any offer on the table for the tax years at issue[3] and failed to submit the financial documentation that would have been required for consideration of an offer. In any event, as SO2 observed, petitioners would not have qualified for an OIC even if they had submitted an offer because they had failed to make estimated tax payments for 2013-2015 and thus were not current on their Federal tax obligations. <u>See</u> <u>Friedman</u>, at \*10; IRM pt. 5.8.7.2.2.2(1) (Mar. 7, 2014).

Petitioners raised numerous other issues in their correspondence with SO2, including a whistleblower complaint, a claim for relief from joint and several liability for 2006, and levy notices for 2005-2006. We will not address these issues because they are irrelevant to our review of the IRS collection action for 2010-2012. Finding no abuse of discretion in SO2's decision to uphold the NFTL

---

[3]Petitioners had previously submitted an OIC for tax years 2005 and 2006, which the IRS rejected on October 17, 2012.

**[*12]** filing for those years, we will grant summary judgment for respondent and sustain the proposed collection action.

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.