G. A. STAFFORD & CO., Inc. v.
PEDRICK.

No. 60, Docket 21088.

United States Court of Appeals
Second Circuit.

Dec. 2, 1948.

Burke & Burke, of New York City (Frederic D. H. Gilbert and J. Frederic Taylor, both of New York City, of counsel), for appellant.

John F. X. McGohey, U. S. Atty., of New York City (John B. Creegan, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before L. HAND, Chief Judge, and SWAN and CHASE, Circuit Judges.

SWAN, Circuit Judge.

This is an action to recover excess profits taxes of $30,844.07 collected by the defendant from the plaintiff for the year 1941. It was tried to the court without a jury upon an agreed statement of facts and resulted in a judgment of dismissal, from which the plaintiff has appealed. The plaintiff claimed below, and repeats the contention here, that the agreed facts show that it is exempt from excess profits tax by virtue of section 727(g) of the Internal Revenue Code, 26 U.S.C.A. § 727(g), printed in the margin.[1]

The plaintiff is a domestic corporation whose principal business during the three year period ending December 31, 1941, was the sale and exportation to customers located in foreign countries of textile products, chiefly cotton goods, purchased by it from manufacturers located in the United States. Concededly it satisfied the condition specified in subdivision (2) of section 727(g). The disputed issue is whether it met the condition of subdivision (1): concretely, whether 95% of its gross income for said three year period was "derived from sources other than sources within the United States". The district court held that the plaintiff did not satisfy this

condition for two reasons, one being that more than 5% of its gross income for said period was derived from cotton export subsidies paid by the United States. The subsidies were paid under authority of the Agricultural Adjustment Act, 7 U.S.C.A. § 612c, and the Soil Conservation and Domestic Allotment Act, 16 U.S.C.A. § 590l, pursuant to an export subsidy program announced by the Secretary of Agriculture in July 1939. Their total for the three year period ending December 31, 1941, amounted to $60,567.80 and that sum was much more than 5% of the plaintiff's gross income for the period.

Section 728 of the Internal Revenue Code, 26 U.S.C.A. § 728 provides that "The terms used in this subchapter [2] shall have the same meaning as when used in Chapter 1." The subsidy payments are plainly within the definition of "gross income" contained in section 22(a) of Chapter 1, 26 U.S.C.A. § 22(a). Baboquivari Cattle Co. v. Commissioner, 9 Cir., 135 F.2d 114 so held, and the appellant does not question its correctness. Consequently, unless such payments can be held to be "derived from sources other than sources within the United States" they defeat the claim of exemption under section 727(g).

There is no statutory definition of income "derived from sources other than sources within the United States". Subdivision (a) of section 119 of chapter 1 lists items of gross income which shall be treated as income from sources within the United States; subdivision (c) lists items which shall be treated as income from sources without the United States; and subdivision (e) deals with income from sources partly within and partly without the United States. But we find nothing in section 119 which throws light on how the cotton export subsidy payments should be treated. It certainly strains the meaning of the words to say

---

[1] "Section 727 Exempt corporations

"The following corporations * * * shall be exempt from the tax imposed by this subchapter:

"(g) Domestic corporations satisfying the following conditions:

"(1) If 95 per centum or more of the gross income of such domestic corporation for the three-year period immediately preceding the close of the taxable year

* * * was derived from sources other than sources within the United States; and

"(2) If 50 per centum or more of its gross income for such period * * * was derived from the active conduct of a trade or business."

[2] Subchapter E of chapter 2 which imposes the excess profits tax.

that such payments are not derived from sources within the United States. They are received from the United States Treasury, and every act which the exporter must do to become entitled to the subsidy is done in this country. He must file with an agent of the Secretary of Agriculture "a written declaration of delivery for export, mailing to an export destination, or export, or sale for export," and must make application for payment in voucher form and submit such proof of exportation as the Secretary or his agent may require. Thus it is optional with the exporting corporation whether or not to receive a subsidy payment which will amount to more than 5% of its gross income, just as it is optional with it to make domestic sales in an amount which will preclude qualifying for the exemption under section 727(g).

The appellant argues that the obvious purpose of Congress in enacting section 727(g) was to promote foreign trade by relieving domestic corporations operating in that field from the burdensome excess profits tax; that one of the declared purposes of the Agricultural Adjustment Act was to "encourage the exportation of agricultural commodities and products thereof by the payment of benefits in connection with the exportation thereof or indemnities for losses incurred in connection with such exportation";[3] and that the statutes should be so construed as not to cause the acceptance of subsidy benefits to preclude allowance of the tax exemption benefits, since each statute is intended to promote foreign trade. Although not unmindful of the force of this argument, the court is not convinced that the subsidy payments can be deemed income derived from a source without the United States. The tax exemption was expressly conditioned on 95% of the taxpayer's gross income coming from such a source. The taxpayer may fail to meet that condition either by selling goods to too many domestic buyers or by receiving too large a percentage of its gross income from the United States Treasury in the form of export subsidy payments. It may be that if the attention of Congress had been directed to the precise issue when enacting section 727(g), a provision would have been inserted to the effect that export subsidies payable under existing laws should not be treated as income from sources within the United States; but of this we cannot be sure. Since the exemption was to be withheld if more than 5% of the taxpayer's income came from domestic sources, for example, from investment in United States bonds, we cannot feel certain that Congress did not intend to withhold it also, if the taxpayer received a large percentage of income from subsidies paid by the United States Treasury, for the receipt of such payments was optional with the taxpayer and a definition of "gross income" broad enough to include them was expressly incorporated into the exemption statute. Consequently we believe that the court was right in ruling that the plaintiff's receipt of subsidy payments in the amount of some $60,000 destroyed its right to exemption from the excess profits tax.

This makes unnecessary consideration of the other ground upon which the decision below was also rested.

Judgment affirmed.

---

[3] Section 590*l* of the Soil Conservation and Domestic Allotment Act indicates a similar purpose in authorizing the Secretary of Agriculture to use such part of the funds therein appropriated "as he deems necessary * * * for the expansion of domestic and foreign markets * * * for agricultural commodities or the products thereof * * *."