T.C. Memo. 1995-536


UNITED STATES TAX COURT


EVERT E. AND EVA F. BERGLUND, Petitioners
<u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 25489-91.          Filed November 13, 1995.


Evert E. Berglund, pro se.

<u>Diane L. Worland</u>, for respondent.


MEMORANDUM OPINION


HAMBLEN, <u>Chief Judge</u>:  Respondent determined deficiencies in, and additions to, petitioners' Federal income tax for the taxable years 1986, 1987, and 1988 as follows:

|  |  | Additions to Tax | | |
| Year | Deficiency | Sec. 6653(a)(1)(A) | Sec. 6653(a)(1)(B) | Sec. 6661 |
| 1986 | $85,726.45 | $4,286.32 | * | $21,431.61 |
| 1987 | 3,596.50 | --- | --- | --- |
| 1988 | 2,396.13 | --- | --- | --- |

[1]50 percent of the statutory interest due on the amount of the deficiency attributable to negligence.

Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

On April 30, 1992, Eva F. Berglund died in Danville, Illinois. On May 16, 1994, respondent filed a motion to dismiss for lack of prosecution as to Eva F. Berglund. On July 25, 1994, we granted respondent's motion to dismiss. References to petitioner are to Evert E. Berglund. Amounts determined to be due from petitioner will also be determined to be due from Eva F. Berglund. References to petitioner's spouse are to Eva F. Berglund.

After concessions by respondent,[1] the remaining issues for decision are: (1) Whether petitioner had taxable capital gain in 1986 from the sale of approximately 652 acres of farmland; (2) whether petitioner's spouse had taxable pension income of

---

[1]Respondent has conceded that petitioner is not liable for the additions to tax for the year 1986 pursuant to the provision of secs. 6661 and 6653(a)(1)(A) and (B). Respondent has conditionally conceded that petitioner is entitled to various unclaimed deductions during the years in issue. Respondent's conditional concessions are contingent upon this Court's finding that petitioner sold approximately 652 acres of farmland in 1986. Respondent has conditionally conceded that petitioner is entitled to previously unclaimed interest expense deductions for the years 1986, 1987, and 1988 in the amounts of $147,624.52, $11,987.85, and $3,774.01, respectively. Respondent has also conditionally conceded that petitioner is entitled to use previously unclaimed net operating loss deductions in the years 1986, 1987, and 1988 in the amounts of $64,196, $12,736, and $13,786, respectively. Based on respondent's concessions and conditional concessions, petitioner's income tax liabilities for the years 1986, 1987, and 1988 are $0, $0, and $784, respectively.

$3,482.29, $3,567.13, and $3,651.97 for the years 1986, 1987, and 1988, respectively; (3) whether petitioner and his spouse had taxable Social Security benefits in 1986 in the amount of $4,095; and (4) whether petitioner has unreported taxable payments made by the U.S. Department of Agriculture pursuant to the Soil Conservation and Domestic Allotment Act (ASCS) in the amounts of $11,198.96 and $11,298 for 1987 and 1988, respectively.

## Background

This case was submitted fully stipulated pursuant to Rule 122. The stipulation of facts and the attached exhibits are incorporated by this reference, and the facts contained therein are found accordingly.

Petitioner and his spouse resided in Danville, Illinois, at the time the petition was filed in this case.

On May 2, 1989, petitioner and his spouse filed untimely joint Federal individual income tax returns for the years 1986, 1987, and 1988 with the Collection Division of the District Director for Internal Revenue located in Springfield, Illinois. Petitioner and his spouse prepared their joint Federal income tax returns using the cash receipts and disbursements method of accounting.

Petitioner and his spouse were engaged in farming operations during the years 1986, 1987, and 1988. Petitioner's spouse was a retired school teacher for the State of Illinois during the years 1986, 1987, and 1988.

On August 24, 1976, petitioner and his spouse mortgaged all of their Illinois farmland to the Federal Land Bank of St. Louis (FLB) for the principal sum of $625,000. The FLB mortgage is a first lien against petitioner and his spouse's Illinois farmland. On August 30, 1978, petitioner and his spouse obtained a second mortgage on all of their Illinois farmland from the Farmers Home Administration (FHA) in the principal sum of $70,000. On May 25, 1979, petitioner and his spouse obtained a third mortgage on all of their Illinois farmland from FHA in the principal sum of $310,000.

Petitioner and his spouse's Illinois farmland was divided into seven tracts. As of August 3, 1983, tracts 1, 2, 3, 4, 5, and 6 of petitioner and his spouse's Illinois farmland were held in fee simple title in the name of the First National Bank of Danville (FNB), as trustee under a trust agreement dated August 3, 1983, known as land trust No. 5179, and tract 7 of petitioner and his spouse's Illinois farmland was held in fee simple title in the name of FNB, as trustee under a trust agreement also dated August 3, 1983, known as land trust No. 5180. The FNB land trusts Nos. 5179 and 5180 provided that FNB would manage the Illinois farmland owned by petitioner and his spouse. Petitioner and his spouse were the beneficial owners of the property of the trusts.

On August 4, 1983, petitioner and his spouse and their daughter and son-in-law, Eva L. Dunavan and Joseph E. Dunavan,

executed a promissory note in favor of FNB in the amount of $927,862.21 for the stated purposes of paying off a farm loan at Second National Bank of Danville and for farm operating expenses.

Petitioner and his spouse pledged the following as collateral for the promissory note executed in favor of FNB, on August 4, 1983: (1) Assignment of beneficial interest in the FNB land trust agreements Nos. 5179 and 5180; (2) real estate mortgages on 1,300 acres of Indiana land; (3) loan agreements dated August 1 and 4, 1983; (4) security agreement dated August 4, 1983, on machinery and crops; and (5) continuing guaranty of petitioner and his spouse and their daughter and son-in-law.

Petitioner and his spouse defaulted on the promissory note to FNB. As a result of petitioner and his spouse's default in 1986 FNB commenced a foreclosure sale of the assets that were pledged to guarantee the promissory note.

On July 3, 1986, petitioner and his spouse and a representative of FHA executed form FmHA 465-1, Application for Partial Release, Subordination, or Consent, wherein there is a partial release of 656 acres of petitioner and his spouse's Illinois farmland. Approximately 652 acres of petitioner and his spouse's 1,120 acres of Illinois farmland were sold in a foreclosure sale in 1986. Petitioner's basis in the 1,120 acres of Illinois farmland was $342,000. The proceeds from the

foreclosure sale were $721,599.97,[2] which were distributed as follows:  (1) $669,176.55 was paid to FNB, (2) $13,149.91 was paid for various closing costs, and (3) $39,273.51, the remaining balance, was paid to FHA.

Petitioner maintains the 1986 foreclosure sale was invalid because his property was transferred without either petitioner or his spouse's permission.  Petitioner stated in his brief that he and his spouse sold 180 acres of farmland to their daughter and son-in-law in July of 1986 for approximately $180,000.  This sale was allegedly a part of the foreclosure sale of approximately 652 acres of petitioner and his spouse's real estate.

On February 21, 1989, petitioner and his spouse filed for voluntary bankruptcy under chapter 12 in the U.S. Bankruptcy Court for the Central District of Illinois.  On June 29, 1989, the bankruptcy court found petitioner and his spouse to be ineligible for relief under chapter 12 and converted the case into a chapter 11 proceeding.  On October 15, 1990, the bankruptcy court denied petitioner and his spouse's motion requesting the return of their allegedly wrongfully converted farmland.  The bankruptcy court found that the 1986 foreclosure sale of approximately 652 acres of Illinois farmland was valid. Petitioner and his spouse appealed the bankruptcy court's

---

[2]The statutory notice of deficiency in this case includes $716,235 as the net proceeds from the sale of petitioner and his spouse's farmland.

decision. On May 8, 1991, the U.S. District Court for the Central District of Illinois affirmed the bankruptcy court's decision. Petitioner and his spouse appealed the decision of the District Court to the U.S. Court of Appeals for the Seventh Circuit, and their appeal was dismissed with prejudice by order dated February 4, 1993.

In a statement dated April 28, 1989, attached to petitioner and his spouse's joint Federal income tax returns for 1986, 1987, and 1988, petitioner and his spouse wrote that they had been the owners of 1,120 acres of farmland in Illinois and 1,342 acres of farmland in Indiana and that "The [First National] Bank has sold our equipment and our Illinois buildings and all but 384 acres of Illinois land against our wishes."

In a statutory notice of deficiency dated September 16, 1991, respondent determined, inter alia, that petitioner and his spouse had sold approximately 652 acres of farmland in 1986. According to respondent's computation, the amount realized on the sale was $716,235 and their adjusted basis was $199,101, resulting in a long-term capital gain deduction of $310,280.40. Ultimately, respondent increased their long-term capital gains by $206,853.60 for 1986.

Subsequent to the issuance of the statutory notice of deficiency and the filing of the petition in this case, respondent verified that: (1) A portion of the proceeds from the sale of the farmland in 1986, totaling $147,624.52, was applied

by lending institutions to the interest expense incurred on the outstanding loans to petitioner and his spouse, and (2) additional payments were applied by the lending institutions to the interest expenses incurred on the outstanding loans in the total amounts of $11,987.85 for 1987 and $3,774.01 for 1988.

On their joint Federal income tax returns for 1986, 1987, and 1988, petitioner and his spouse did not claim interest expense deductions in the amounts of $147,624.52, $11,987.85, and $3,774.01, respectively. Additionally, petitioner and his spouse did not make any such claim as a part of their petition filed in this case.

Subsequent to the issuance of the notice of deficiency and the filing of the petition in this case, petitioner substantiated, and respondent's counsel conditionally conceded, that petitioner is entitled to net operating loss carryforwards into the years 1986, 1987, and 1988 in the amounts of $64,196, $12,736, and $13,786, respectively. Petitioner and his spouse did not claim any net operating loss deduction on their joint Federal income tax returns for 1986, 1987, and 1988. Additionally, petitioner and his spouse did not make any such claims as part of their petition in this case.

On their joint Federal income tax returns for 1986, 1987, and 1988, petitioner and his spouse reported receipt of pension income. Petitioner and his spouse attached to their Federal income tax returns for 1986, 1987, and 1988 Forms W-2p, Statement

of Receipts of Annuities, Pension, Retired Pay or IRA Payments, from the State of Illinois issued to Eva F. Berglund reflecting in block 10 of said form taxable pension payments of $3,482.29, $3,567.13, and $3,651.97, respectively. On their Federal income tax returns for 1986, 1987, and 1988, petitioner and his spouse did not report as taxable any amount of pension income received by petitioner's spouse from her former employment as a school teacher.

Petitioner and his spouse reported the receipt of $8,192 in Social Security benefits on line 21a of their joint Federal income tax return for 1986 but did not report as taxable any portion of those benefits on line 21b of their 1986 return.

On their joint Federal income tax returns for 1987 and 1988, petitioner and his spouse did not report the receipt of income in the form of ASCS payments in the amounts of $11,198.96 and $11,298, respectively. Petitioner admits that in 1987 ASCS payments in the amount of $11,198.96 were applied to the FHA mortgage. Additionally, in a power-of-direction dated April 28, 1989, petitioner and his spouse stated that their agent, FNB, was holding "the 1989 ASCS contract and proceeds thereof".

Petitioner filed his brief with various documents attached that had not been introduced at trial. Petitioner does not contest that his and his spouse's farmland was in fact sold; rather, petitioner contends that he and his wife were tricked

into signing various documents when they obtained their loans. Petitioner's brief contains the following prayer of relief:

> We beg and pray the courts will allow our real estate and property to be returned to us as of August 3, 1983 so our just bills can be paid. We enter a motion and petition that the First National Bank of Danville of Danville, Illinois and Trustee James R. Geekie are guilty of discrimination and price fixing our real estate and conversion of Federal funds. We enter a motion and petition of criminal conspiracy, for we are victimized in a fraudulent judgment scheme and corruption upon the courts and we ask for relief.

## Discussion

Petitioner bears the burden of establishing that respondent's determination of deficiencies, as contained in the statutory notice of deficiency, is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Petitioner did not offer any testimony or documentary proof that the determinations of respondent in her statutory notice of deficiency, as modified by respondent's concessions and conditional concessions, are incorrect. Petitioner attached documents to his brief that had not been admitted into evidence when this case was accepted as a fully stipulated case on October 3, 1994. Statements in briefs do not constitute evidence. Rule 143(b). On October 3, 1994, the record of this case was closed. Accordingly, we hold that the exhibits received from petitioner that were not offered at trial are not admitted into evidence and are not a part of the record.

Issue 1. Sale of Farmland

Section 61(a) broadly defines gross income as "all income from whatever source derived".  Section 61(a)(3) provides further that gross income specifically includes gains derived from dealing in property.  The Supreme Court has repeatedly held that Congress, in broadly defining gross income, intended to tax all gains except those specifically exempted.  Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955).  Section 1.61-6(a), Income Tax Regs., provides that unless specifically excluded by law, gains realized on the sale of property are included in gross income.  Generally, gain is the excess of the amount realized over the adjusted basis for the property sold.  Sec. 1001(a). The specific rules for computing the amount of gain or loss are contained in section 1001 and the regulations thereunder.

Petitioner did not offer any proof that the preceding recitation of the facts surrounding this case is incorrect.  On August 4, 1983, petitioner, petitioner's spouse, and their daughter and son-in-law executed a $927,862.21 promissory note in favor of FNB.  They gave, among other things, a mortgage on both the Illinois farmland and the Indiana farmland owned by petitioner and his spouse.  Thereafter, petitioner and his spouse defaulted on this promissory note in favor of FNB as well as the notes held by the senior lienholders on the Illinois farmland.

As a result of these defaults, approximately 652 acres of the Illinois farmland were sold in 1986 for the sum of $721,599.97. The proceeds of the sale were divided as follows: $669,176.55 to FNB, $13,149.91 for closing costs, and the balance of $39,273.51 to FHA. FNB and FHA applied $147,624.52 of the sale proceeds to accrued unpaid interest expense on petitioner's loans, and the balance of $560,825.54 was applied to the principal loan amounts. None of the interest applications was reported as a business deduction on petitioner and his spouse's joint Federal income tax return for 1986.

Petitioner's basis in the 1,120 acres of Illinois farmland is $342,000. Accordingly, his basis in the 652 acres sold is $199,101. Sec. 1.61-6(a), Income Tax Regs. (when part of a larger property is sold, the cost or other basis of the entire property is equitably apportioned among the several parts, and the gain realized on the part of the entire property sold is the difference between the selling price and the cost or other basis allocated to such part).

As we previously stated, because we hold that petitioner has not presented any evidence to establish that respondent's determination, as modified by concessions, is incorrect, we need not address respondent's alternative contention that petitioner is collaterally estopped from relitigating that the sale had in

fact occurred. Although we sympathize with petitioner for being forced to sell approximately 652 acres of farmland against his will in 1986 due to his nonpayment of outstanding loans, the fact remains that the property was sold. Despite petitioner's repeated litigation in courts in the States of Illinois and Indiana, the bankruptcy court, the District Court, and the Court of Appeals for the Seventh Circuit, no court has reversed the foreclosure sale of petitioner's real estate. Petitioner and his spouse failed to report this foreclosure-sale transaction on their joint Federal income tax return for 1986. Accordingly, we sustain respondent's determination with respect to this issue.[3]

Issue 2. Pension Income

Section 61(a)(11) further elaborates on the section 61(a) definition of gross income by providing that gross income specifically includes income from pensions. See sec. 1.61-11, Income Tax Regs. Petitioner and his spouse's returns for 1986, 1987, and 1988 show that petitioner's spouse received pension

---

[3]We note that respondent did not assert an increased deficiency in this case based upon the increased sale price of petitioner's farmland. It does not appear that any increased deficiency will be generated as a result of the increased sale price of the property in this case because respondent has made various concessions and conditional concessions. Nevertheless, we note that the deficiencies ultimately determined under the Rule 155 computations are limited to the amount of the deficiencies respondent determined in the statutory notice of deficiency.

income from the State of Illinois. The amounts reported on the 1986 and 1987 returns are the same as those listed on the Forms W-2p attached to the returns. The amount reported on the 1988 return is listed as $3,482.29, not the $3,651.97 listed in the attached Form W-2p. No amounts are listed as taxable pension income on the returns despite the statement in block 10 of the Forms W-2p that all of the pension income for each year is taxable.

Petitioner bears the burden of proof on this issue. Petitioner has failed to establish that petitioner's spouse did not receive taxable pension income for 1986, 1987, and 1988, as determined by respondent. Accordingly, we sustain respondent's determination with respect to this issue.

Issue 3. Social Security Benefits

There is no dispute between petitioner and respondent that petitioner and his spouse received $8,190 of Social Security benefits in 1986. The only dispute is whether any of the benefits received by petitioner and his spouse are taxable. The taxability of Social Security benefits is statutorily derived based upon the amount of gross income, as modified by section 86(b)(2), petitioner and his spouse received in 1986. Sec.

86(a).[4]  Section 86(b)(1) provides that married taxpayers filing joint returns whose modified adjusted gross income (plus one-half of their Social Security benefits) exceeds $32,000 must include in income the lesser of:  (1) One-half of their Social Security benefits, or (2) one-half of the excess of their modified adjusted gross income over $32,000.  Because we have previously found various increases to petitioner's gross income for the taxable year 1986, we find that petitioner is required to include $4,095 of the Social Security benefits in income.  Sec. 86. Accordingly, we sustain respondent's determination with respect to this issue.

Issue 4. Unreported Agricultural Subsidy Payments

Respondent determined that during the years 1987 and 1988, petitioner and his spouse, or their agent, FNB, received ASCS payments in the amounts of $11,198.96 and $11,298, respectively. Petitioner and his spouse did not report these ASCS payments on

---

[4]Sec. 86(a) provides:

Gross income for the taxable year of any taxpayer described in subsection (b) * * * includes social security benefits in an amount equal to the lesser of

(1) one-half of the social security benefits received during the taxable year, or

(2) one-half of the excess described in subsection (b)(1).

their 1987 and 1988 Federal income tax returns.  Payments to agricultural producers pursuant to the ASCS constitute taxable income to the recipients.  <u>G.A. Stafford & Co. v. Pedrick</u>, 171 F.2d 42 (2d Cir. 1948); <u>Baboquivari Cattle Co. v. Commissioner</u>, 135 F.2d 114 (9th Cir. 1943), affg. 47 B.T.A. 129 (1942); <u>Harding v. Commissioner</u>, T.C. Memo. 1970-179.[5]

Petitioner has offered no evidence to establish that the subject payments were not made to him or for his benefit. Instead, petitioner has stated that he and his spouse directed the 1987 ASCS payment of $11,198.96 to be applied to his FHA loan.  The ASCS payments fall within the broad definition of gross income in section 61.  Accordingly, we sustain respondent's determination on this issue.

To reflect the foregoing and concessions by respondent,

<u>Decision will be entered under</u>

<u>Rule 155.</u>

---

[5]Sec. 1.61-4(a)(4), Income Tax Regs., provides that farmers using the cash receipts and disbursements method of accounting shall include in gross income for the taxable year "All subsidy and conservation payments received which must be considered as income."