# United States Tax Court

T.C. Memo. 2023-69

TYRONE DIETZ AND TONI DIETZ,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 7702-22L.                    Filed June 13, 2023.

————

*Shad M. Brown*, *Jason M. Silver*, *Chris J. Sheldon*, and *Ric D. Hulshoff*, for petitioners.

*Elisa M. Gonzalez*, *Derek S. Pratt*, *Ping Chang*, and *Vanessa A. Johnson*, for respondent.

## MEMORANDUM OPINION

WEILER, *Judge*: In this collection due process (CDP) case, petitioners, Tyrone Dietz and Toni Dietz, seek review pursuant to sections 6320[1] and 6330 of a determination by the Internal Revenue Service (IRS) Independent Office of Appeals (Appeals) upholding the filing of a notice of federal tax lien (NFTL) with respect to an unpaid federal income tax liability for the 2018 tax year and rejecting petitioners' request for collection alternatives and penalty abatement. For the reasons set forth below, we will affirm Appeals' determination.

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[*2]                          *Background*

This case was submitted fully stipulated under Rule 122. The stipulated facts are incorporated in our findings by this reference. Petitioners resided in Arizona when they timely filed their Petition.

I.   *IRS Collection Efforts*

When IRS collection efforts began, Mr. Dietz had unpaid individual and joint tax liabilities for tax years 2009 through 2011 and 2013 through 2017, and trust fund recovery penalties for tax periods ending in June 2014, June 2015, and September 2015, totaling approximately $408,354. Mrs. Dietz had unpaid joint income tax liabilities for tax years 2011 and 2013 through 2017, totaling approximately $283,068. Mr. Dietz is an attorney, and during all years at issue he operated the Dietz Law Firm, PLLC, a Phoenix, Arizona, based firm. The record shows that Mrs. Dietz worked at her husband's law firm in some capacity but was not remunerated during the aforementioned years.

On April 24, 2019, petitioners met with a revenue officer (RO) to discuss the resolution of their unpaid personal and business tax liabilities. The RO reviewed petitioners' documentation and determined that Mr. Dietz had a tax qualified profit-sharing plan, which was valued at $201,343 as of March 31, 2019. The profit-sharing plan is sponsored by the Dietz Law Firm, and Mr. Dietz is the sole participant in the plan. On the basis of the available equity in Mr. Dietz's profit-sharing plan, the RO requested that petitioners either liquidate the profit-sharing plan to pay the outstanding tax liabilities or file an offer-in-compromise (OIC).

On October 15, 2019, petitioners timely filed their joint 2018 Form 1040, U.S. Individual Income Tax Return, reporting an income tax liability of $10,486. Petitioners made a payment with their 2018 return of $5,000, resulting in an assessed and unpaid tax liability of $5,486 (excluding penalties and interest). On February 27, 2020, the RO mailed petitioners Letters 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing, regarding their unpaid income tax liability for the 2018 tax year.

II.  *Initial CDP Hearing*

On March 5, 2020, petitioners timely submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing, requesting

**[*3]** a CDP or equivalent hearing for the 2018 tax year. On the Form 12153, petitioners checked the "Installment Agreement," "Offer in Compromise," and "I Cannot Pay Balance" boxes as collection alternatives. Additionally, petitioners checked the box for the withdrawal of the federal tax lien, stating that the "[l]ien hampers collection efforts (IRM 5.12.9.3 & IRC 6323(j)(1)(C)); lien does not secure any equity in real property."

Petitioners also checked the box labeled "Other" on Form 12153, under which they reiterated that they are seeking and are entitled to a collection alternative (e.g., OIC or installment agreement). Moreover, petitioners requested that their accounts be placed in currently-not-collectible status and claimed that they are entitled to the abatement of penalties. Notably, petitioners make no averment that they are not liable for all or part of the tax liabilities.

On June 16, 2020, an Appeals settlement officer (SO) was assigned to petitioners' CDP hearing. The SO reviewed petitioners' file and verified that all requirements of applicable law and administrative procedure had been satisfied.

On June 17, 2020, the SO sent petitioners a Letter 4837, scheduling a telephone CDP hearing for August 25, 2020. Among other things, the SO requested that petitioners submit within 14 days (1) a completed Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals; (2) a completed Form 656, Offer in Compromise, and any documentation required for its completion; (3) proof of their estimated tax payments; and (4) supporting financial documentation for the last three months, which included a specific request for "[c]opies of statements from all accounts (checking, savings, money market, IRA, 401(k), etc.) for the most recent 12-month period."

On July 15, 2020, petitioners sent the SO a completed Form 656, offering $45,966 to fully settle their outstanding joint income tax liabilities of approximately $437,369 for tax years 2009 through 2011 and 2013 through 2019.[2] In their OIC petitioners argue that their "financial condition will not allow them to full pay the tax liabilities, and . . . that payments under an installment agreement will not result in full

---

[2] Although the record is not entirely clear, it appears petitioners accrued an additional joint income tax liability for tax year 2019 while their CDP hearing was pending and shortly before making their OIC. Petitioners' original OIC also failed to include Mr. Dietz's separate trust fund recovery penalties for tax periods ending in June 2014, June 2015, and September 2015.

[*4] payment of the tax liabilities." Petitioners attached to their OIC Form 433–A, on which, among other things, they represented the current value of their personal residence to be $376,600[3] and disclosed a profit-sharing plan with a fair market value of approximately $202,000. Petitioners listed the profit-sharing plan as a business asset on their Form 433–A.

The SO reviewed petitioners' OIC and forwarded it to the IRS's Centralized Offer in Compromise (COIC) unit on July 27, 2020, for consideration. Petitioners' CDP hearing was held in abeyance pending consideration by the COIC unit of their OIC.

III.    *COIC Consideration and Rejection*

Upon receiving petitioners' OIC, an offer specialist in the COIC unit determined that additional documentation, including information pertaining to petitioners' profit-sharing plan, was necessary to evaluate their OIC. On August 26, 2021, the offer specialist called petitioners' authorized representative, Laura Sexton, and left a voicemail requesting the aforementioned information.

By letter dated August 27, 2021, the offer specialist informed petitioners that they would need to revise their Form 656, provide missing information, and/or substantiate items listed on their collection information statement.[4] Petitioners were again requested to provide a statement showing the value of their interest in "all retirement accounts and/or profit sharing plans." On September 10, 2021, petitioners responded to the offer specialist's letter, returning the executed Forms 656. Additionally, petitioners provided the offer specialist with information concerning Mrs. Dietz's Northern Trust Co. individual retirement account; however, they failed to provide any information regarding Mr. Dietz's profit-sharing plan.

In accordance with petitioners' newly executed Forms 656, the offer specialist bifurcated petitioners original joint OIC into two

---

[3] On September 24, 2021, petitioners acknowledged that this value did not reflect the actual fair market value of their personal residence, stating that "we always start low as the initial starting point of negotiation."

[4] Petitioners were requested to "complete, date, and sign" the enclosed Forms 656, since the initial OIC sought to compromise both individual and joint tax liabilities, but the compromise of each of these liabilities is considered separately by the IRS. Accordingly, the IRS prepared an amended Form 656 for Mr. Dietz and a related Form 656 for Mrs. Dietz, separating the initial offer into two.

[*5] separate OICs. Mr. Dietz's revised OIC offered $22,983 to compromise individual and joint income tax liabilities for tax years 2009 through 2011 and 2013 through 2019 and trust fund recovery penalties for the tax periods ending in June 2014, June 2015, and September 2015, totaling approximately $438,182. Mrs. Dietz's revised OIC offered $22,983 to compromise joint income tax liabilities for tax years 2011 and 2013 through 2019, totaling approximately $288,868.

The COIC unit concluded that Mr. Dietz had a reasonable collection potential (RCP)[5] of $658,662 over a ten-year period, based on net monthly household income of $3,762 and total assets of $207,222. The COIC unit also concluded that Mrs. Dietz had an RCP of $635,545 over an approximately nine-year period, based on net monthly household income of $3,762 and total assets of $236,773. The total household monthly expenses of $9,545 were allocated 100% to both petitioners in calculating their RCPs. The asset figures were principally based on petitioners' personal residence having an estimated quick sale value of $544,653 (which is 80% of $680,816, i.e., the estimated fair market value) minus a $310,877 encumbrance on the property, resulting in $233,776 of available equity; and Mr. Dietz's profit-sharing plan having $161,600 of available equity. In determining petitioners' individual RCP, the IRS divided the available equity in petitioners' personal residence and the profit-sharing plan equally between them and included other respective assets.

By letters dated September 28, 2021, the COIC unit made the preliminary decision to reject petitioners' OICs. According to the letters, the COIC unit determined that Mr. Dietz's OIC would need to be increased before consideration and that Mrs. Dietz had the ability to "pay [her] liability in full within the time provided by law." Petitioners' case was subsequently returned to Appeals for final determination.

---

[5] The calculation of a taxpayer's RCP is central to the evaluation of an OIC. *Churchill v. Commissioner*, T.C. Memo. 2011-182, 2011 WL 3300235, at *3; *see* Internal Revenue Manual (IRM) 5.8.5.1 (Sept. 23, 2008). A settlement officer generally derives the reasonable collection potential from her estimate of the value of a taxpayer's assets and likely future income. *See* IRM 5.8.4.3.1 (Apr. 30, 2015). Likely future income, in turn, is determined by multiplying the taxpayer's monthly disposable income (gross income minus necessary living expenses) by a certain number of months. *See id*. 8.23.3.3.2.2 (Nov. 21, 2013).

[*6] IV.    *CDP Hearing Continuation and Notice of Determination*

Petitioners' case was reassigned to another SO. On November 22, 2021, the SO sent petitioners a letter scheduling a telephone conference for December 9, 2021, and explaining that this would be petitioners' opportunity to discuss the reasons that they disagreed with the preliminary denial of their OICs. The letter further instructed petitioners to review the disagreed items from their Appeals request (including any attached income, expense, and asset worksheets) and to provide any additional information for her consideration by December 6, 2021. On January 12, 2022, the SO faxed petitioners a copy of the administrative file, which had previously been provided on December 9, 2021, showing that the IRS included the equity of the profit-sharing plan in petitioners' respective RCPs.

Petitioners' CDP hearing was postponed until January 13, 2022, and on January 4, 2022, the SO received a fax outlining the disagreed items. Specifically, petitioners took issue with the income and expense computations and the valuation of their personal residence, arguing that it should have been valued at $560,000 on the basis of a broker's price opinion.

During the telephone CDP hearing the SO verified that all applicable laws and administrative procedures were complied with. The SO discussed the need for petitioners to provide an appraisal from a certified appraiser in order for her to consider a property value other than that which had already been determined by the COIC unit. The SO also noted that even if she accepted their valuation, petitioners would still be able to fully pay their tax liabilities. Moreover, the SO addressed the offer specialist's computations and reviewed the income and expense tables that were used in considering their OICs. The SO concluded the CDP hearing by giving petitioners until January 27, 2022, to provide her with a statement of the items in dispute from the offer specialist's OIC review and proof of why those items were erroneous. At no point during the CDP hearing (or thereafter) did petitioners challenge their underlying tax liabilities.

On January 26, 2022, petitioners faxed the SO the following documents: an appraisal of their personal residence, concluding that it has a value of $560,000; a copy of their original OIC submission; and a copy of their amended OIC submissions. In the cover letter to the fax, petitioners stated how the RO determined that their profit-sharing plan had no available equity. Petitioners failed to provide any documentation

[*7] regarding the profit-sharing plan in their January 26, 2022, correspondence. On the same day, the SO responded to petitioners via fax and explained that an RO's determination has no bearing on a subsequent SO's financial analysis and that they failed to provide the COIC unit with the current value of the profit-sharing plan despite several attempts from the COIC unit to obtain the information.

The SO further inquired whether petitioners were interested in an installment agreement, giving them until February 9, 2022, to provide an updated Form 433–A. On January 27, 2022, petitioners asserted that they would provide the SO "information related to [the] profit share [plan]." By February 23, 2022, petitioners had yet to provide the SO with any documentation concerning Mr. Dietz's profit-sharing plan or the installment agreement option.

Appeals issued a notice of determination dated March 11, 2022, sustaining the NFTL filing, which was signed by the SO's team manager. In arriving at this conclusion, the SO confirmed that notice and demand was sent to petitioners' last known address and verified that the IRS complied with all requirements of applicable law or administrative procedure. The SO also concluded that petitioners are not entitled to collection alternatives (i.e., an OIC or an installment agreement) since they failed to provide the requested financial information and could fully pay their outstanding tax liabilities.

The SO determined that withdrawal of the NFTL was inappropriate since petitioners had a "history of non-compliance" and that the NFTL was "necessary to protect the government's interest and to establish priority in relation to other creditors." Moreover, the SO determined that petitioners were not entitled to penalty abatement since they failed to provide any explanation in regard thereto; and she noted that petitioners had already received first-time abatement in the prior three tax years. Lastly, after balancing the need for the efficient collection of tax with petitioners' legitimate concern that the collection be no more intrusive than necessary, the SO sustained the filing of the NFTL.

*Discussion*

I. *Preliminary Statement*

The facts in this Opinion are derived from the administrative record developed before Appeals. Absent stipulation to the contrary, an appeal in this case would lie in the U.S. Court of Appeals for the Ninth

[*8] Circuit. *See* I.R.C. § 7482(b)(1)(G), (2). That Court has held that, where de novo review is inapplicable, the scope of review in a CDP case is limited to the administrative record developed before Appeals. *See Keller v. Commissioner*, 568 F.3d 710, 718 (9th Cir. 2009), *aff'g in part* T.C. Memo. 2006-166, *and aff'g in part, vacating in part* decisions in related cases. Accordingly, our review of Appeals' determination in this case is limited by the administrative record. *See Golsen v. Commissioner*, 54 T.C. 742, 756–57 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971).

Petitioners propose that this Court find as fact their allegations that the SO was "hostile, irate, [and] yelling" and "not qualified to be impartial and honest in this case." Aside from the statements made on brief,[6] petitioners fail to reference exhibits or other sources found in the record relied on to support their allegations. *See* Rule 151(e)(3). Since the record before us (which we are bound by) is silent as to any of the SO's alleged acts of impropriety or bias, we find this argument by petitioners to be unsubstantiated.

## II.  *Standard of Review*

We have jurisdiction to review Appeals' determination pursuant to sections 6320(c) and 6330(d)(1). *See Murphy v. Commissioner*, 125 T.C. 301, 308 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006). Where, as here, the underlying tax liability is not at issue, we review the determination of Appeals for abuse of discretion. *Sego v. Commissioner*, 114 T.C. 604, 610 (2000); *Goza v. Commissioner*, 114 T.C. 176, 182 (2000). In reviewing for abuse of discretion, we must uphold Appeals' determination unless it is arbitrary, capricious, or without sound basis in fact or law. *See Murphy*, 125 T.C. at 320; *Taylor v. Commissioner*, T.C. Memo. 2009-27, 2009 WL 275721, at *9. We do not substitute our judgment for that of Appeals, but consider "whether, in the course of making its determination, the Appeals Office complied with the legal requirements of an administrative hearing." *Charnas v. Commissioner*, T.C. Memo. 2015-153, at *7.

---

[6] Statements made on brief do not constitute evidence. Rule 143(c); *Evans v. Commissioner*, 48 T.C. 704, 709 (1967), *aff'd per curiam*, 413 F.2d 1047 (9th Cir. 1969); *Patitz v. Commissioner*, T.C. Memo. 2022-99, at *11; *Leith v. Commissioner*, T.C. Memo. 2020-149, at *15; *Chapman v. Commissioner*, T.C. Memo. 1997-147; *Berglund v. Commissioner*, T.C. Memo. 1995-536.

**[*9] III.** *Abuse of Discretion*

Petitioners assert that the SO abused her discretion in sustaining the collection action and rejecting their proposed collection alternatives. In deciding whether the SO abused her discretion, we consider whether she (1) properly verified that the requirements of applicable law or administrative procedure have been met, (2) considered any relevant issues petitioners raised, and (3) weighed "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of [petitioners] that any collection action be no more intrusive than necessary." I.R.C. § 6330(c)(3); *see* I.R.C. § 6320(c).

Our review of the record establishes that the SO satisfied all of these requirements.

A.      *Verification*

Before issuance of a notice of determination, Appeals must verify that all requirements of applicable law and administrative procedure have been met. I.R.C. § 6330(c)(1), (3)(A). We have authority to review an SO's satisfaction of the verification requirement regardless of whether the taxpayer raised the issue at the CDP hearing. *Kidz Univ., Inc. v. Commissioner*, T.C. Memo. 2021-101, at *10 (citing *Hoyle v. Commissioner*, 131 T.C. 197, 200–03 (2008), *supplemented by* 136 T.C. 463 (2011)).

Respondent contends that petitioners' argument regarding the verification requirement is "vague, unsupported, and conclusory." We agree. Other than raising the argument, petitioners fail to specifically point to where the SO failed to independently verify that any applicable law or administrative procedure has been met. On the basis of the record before us, we find that the SO satisfied the verification requirement. *See* I.R.C. § 6330(c)(1).

[*10] B.   *Issues Raised*[7]

1.   *Legal Background*

Throughout the proceedings in Appeals and in this Court, petitioners' principal argument centered on the rejection of their OICs. The issues petitioners raised surrounding the rejection of the OICs included the computation of their RCPs, the valuation of their personal residence, and the inclusion of Mr. Dietz's profit-sharing plan in their RCPs. We will now address the issues raised with respect to petitioners' OICs.

Section 7122(a) authorizes the Commissioner to compromise an outstanding tax liability on grounds that include doubt as to collectibility, the ground that petitioners stated in their OICs. *See* Treas. Reg. § 301.7122-1(b)(2), (c)(2). The Commissioner may compromise a tax liability on this basis where the taxpayer's assets and income are less than the full amount of his liability. *Id.* Conversely, the Commissioner may reject an OIC when the taxpayer's RCP exceeds the amount he proposes to pay. *See Johnson v. Commissioner*, 136 T.C. 475, 486 (2011), *aff'd*, 502 F. App'x 1 (D.C. Cir. 2013). Generally, the Commissioner will reject any offer substantially below the taxpayer's RCP unless special circumstances justify acceptance of such an offer. *See Mack v. Commissioner*, T.C. Memo. 2018-54, at *10; Rev. Proc. 2003-71, § 4.02(2), 2003-2 C.B. 517, 517. Section 7122(d)(1) gives the Commissioner wide discretion to accept compromise offers and to prescribe guidelines "to determine whether an offer-in-compromise is adequate and should be accepted."

In reviewing the SO's determination, we do not decide for ourselves what would be an acceptable collection alternative. *See Thompson v. Commissioner*, 140 T.C. 173, 179 (2013); *Murphy*, 125 T.C. at 320; *Randall v. Commissioner*, T.C. Memo. 2018-123, at *9 ("We . . . do not recalculate a different amount for an acceptable installment

---

[7] On their Form 12153 petitioners checked the box for NFTL withdrawal and indicated that they sought penalty abatement, but their argument on brief centers on the allegation that the SO abused her discretion in sustaining the NFTL. Petitioners did not raise either issue during the January 13, 2022, CDP hearing. We have held that this Court will not review issues raised under section 6330(c)(2) if they were not raised at the Appeals hearing. *Giamelli v. Commissioner*, 129 T.C. 107, 115 (2007). In any event, the notice of determination clearly shows that the SO considered and determined that petitioners do not satisfy any of the conditions for lien withdrawal under section 6323(j) or penalty abatement. Accordingly, we find no basis in the record for setting aside the SO's determinations.

[*11] agreement or OIC."). Our review instead is limited to determining whether the SO abused her discretion—that is, whether her decision to reject petitioners OICs was arbitrary, capricious, or without sound basis in fact or law. *See Thompson*, 140 T.C. at 179; *Murphy*, 125 T.C. at 320.[8]

## 2.    *Analysis of OICs*

In rejecting petitioners' OICs, the SO reviewed the COIC unit's financial analysis establishing Mr. and Mrs. Dietz as having RCPs of $658,662 and $635,545, respectively. Petitioners aver that the SO did not give them "a reasonable opportunity to discuss the disagreed items" and that she failed to properly compute their RCPs because she made erroneous income/expense and asset/equity calculations. This contention is not supported by the record. Petitioners argue that their RCPs were overstated since the offer specialist allocated the "same income to both taxpayers and then allocated separate expenses." It is undisputed that petitioners have joint monthly income of $13,307, and the record reflects that the total household monthly expenses of $9,545 were allocated 100% to both petitioners. Contrary to petitioners' contentions, we find that petitioners' RCPs were not overstated since the COIC unit properly allocated petitioners' monthly joint income and total household expenses to the two OICs.[9]

Petitioners also contested the valuation of their personal residence as determined by the offer specialist in the COIC unit. However, the SO determined, and we agree, that even with the reduced appraised value of $560,000 they advanced, petitioners' RCPs were substantially greater than the compromise amounts they offered. In fact, either valuation of petitioners' personal residence—$680,000 or

---

[8] We have jurisdiction to review an SO's rejection of an OIC that encompasses liabilities for both CDP years and non-CDP years. *See, e.g.*, *Sullivan v. Commissioner*, T.C. Memo. 2009-4, 2009 WL 20979, at *8–9.

[9] The SO gave petitioners numerous opportunities, starting on November 22, 2021, to provide her with additional information regarding their income, expenses, and assets. During the January 13, 2022, CDP hearing, the SO explained to petitioners how their income and expense tables were calculated by the COIC unit. Lastly, the SO afforded petitioners an additional opportunity to provide her, by January 27, 2022, with a statement of the items in dispute from the offer specialist's preliminary determination to reject their OICs and proof as to why those items are erroneous. Petitioners failed to provide the SO with any meaningful additional documents supporting the notion that their income and expense calculations were not properly calculated by the COIC unit.

**[*12]** $560,000—results in available equity that, in and of itself, exceeds their OICs.

Finally, petitioners contend the SO abused her discretion by refusing to exclude and erroneously including the value of Mr. Dietz's profit-sharing plan as part of their RCPs. The inclusion (or exclusion) of the profit-sharing plan as an includible (or excludable) asset is of no material consequence here since, on the basis of the COIC unit's calculations, petitioners' monthly net disposable income and other includible assets would still allow petitioners to pay their tax liabilities in excess of the amounts offered in the OICs. Accordingly, we decline to consider the issue and find the SO's determination that petitioners' RCPs are greater than their OICs is reasonable and supported by the record.

Our role is not to redetermine the RCP of the taxpayers and whether it is 100% accurate as determined by the COIC unit. *See Gustashaw v. Commissioner*, T.C. Memo. 2018-215, at \*23 (finding that a "[d]etermination of [a taxpayer's] exact RCP would be a meaningless exercise" when the taxpayer's RCP far exceeds the OIC (quoting *Estate of Duncan v. Commissioner*, T.C. Memo. 2016-204, at \*22 n.5, *aff'd*, 890 F.3d 192 (5th Cir. 2018))). Rather our role is to review the actions of Appeals for abuse of discretion and determine whether the SO's actions were arbitrary, capricious, or without sound basis in fact or law. *See Murphy*, 125 T.C. at 320; *Taylor v. Commissioner*, 2009 WL 275721, at \*9. On the basis of the record before us, we conclude that the SO did not abuse her discretion in rejecting petitioners' OICs.

### 3. *Installment Agreement*

Petitioners argue that the SO abused her discretion by failing to properly consider an installment agreement. The record does not suggest that a possible installment agreement was discussed during the CDP hearing. However, in her January 26, 2022, letter, the SO inquired whether petitioners would be interested in an installment agreement and asked them, if they were, to provide a current Form 433–A with proof of income expenses and assets no later than February 9, 2022.

Petitioners failed to respond to the SO's letter by the imposed deadline (or thereafter) regarding an installment agreement, nor did they provide the requested information. Consequently, we find that the SO did not abuse her discretion in determining that petitioners are not entitled to an installment agreement. *See Pough v. Commissioner*, 135

**[\*13]** T.C. 344, 351 (2010) ("[W]hen an Appeals officer gives a taxpayer an adequate timeframe to submit requested items, it is not an abuse of discretion to move ahead if the taxpayer fails to submit the requested items.").

### C. *Balancing*

Petitioners did not allege in their Petition or argue at any later point that the SO failed to consider "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." *See* I.R.C. § 6330(c)(3)(C). Therefore, petitioners are deemed to have conceded this issue. *See* Rule 331(b)(4); *see also Ansley v. Commissioner*, T.C. Memo. 2019-46, at \*19. In any case, there is no evidence in the record suggesting to us that the SO abused her discretion in finding that the balancing requirement in section 6330(c)(3)(C) was met.

## IV.    *Conclusion*

Finding no abuse of discretion, we will sustain Appeals' determination.

We have considered all of the arguments that the parties made, and to the extent they are not addressed herein, we find the arguments to be moot, irrelevant, or without merit.

To reflect the foregoing,

*An appropriate decision will be entered.*